LEMACHER, Appellant, v. CIRCLE CONSTRUCTION CO., INC., Respondent.

*No. 614 (1974). Argued November 26, 1975.—Decided April 7, 1976.*
(Also reported in 240 N. W. 2d 179.)

246

For the appellant there were briefs by *Albert J. Goldberg* and *Goldberg, Previant & Uelmen, S. C.* of Milwaukee, and oral argument by *Albert J. Goldberg.*

For the respondent there was a brief by *deVries, Vlasak & Schallert, S. C.* of Milwaukee, and oral argument by *Arthur J. Vlasak.*

ROBERT W. HANSEN, J.   The plaintiff was injured at work when an improperly supported scaffold gave way. The scaffold was owned and erected by his employer, the subcontractor on the job.   For such work-related injury he was entitled to workmen's compensation benefits from such immediate employer.   This case is not his claim for these benefits.   Rather it is a third-party action in tort against the general contractor as an "owner" and "employer" under the safe-place statute.[1]

[1] Sec. 101.06, Stats. 1967.

The jury found the general contractor negligent, but also found such negligence not to have been causal. It apportioned causal negligence only between the plaintiff and his immediate employer, the subcontractor. On this appeal appellant argues that the jury, having found the general contractor negligent, was required to find his negligence to have been causal. Resolving such issue requires determining the exact duty owed by a general contractor to an employee of a subcontractor.

Appellant sees the duty devolving upon the general contractor to be the same as the duty devolving upon the employer-subcontractor. Negligence of both, he argues, was in failing to provide a place of employment as safe as the nature of the place reasonably permitted. To quote from appellant's brief, his conclusion is that the evidence here established ". . . essentially the same negligence for both: the providing of a scaffold that did not have a necessary and proper footing." Appellant argues that since each one's negligence is based upon the same failure to provide a safe scaffold at a place of employment and, if the immediate employer's negligence was causal, the general contractor's negligence must also be causal.

The flaw in that reasoning is the assumption that a general contractor, by reason of being such and nothing more, had here the same responsibility for the safe erection of the scaffold as did the employer-subcontractor who owned and erected it. Actually, both under common-law negligence and under the safe-place statute, something more is needed than the fact of status as a general contractor to make a general contractor liable for injuries sustained by a subcontractor's employee on a defective scaffold provided by the subcontractor. In an action based on common-law negligence, that "something extra" must be ". . . an affirmative act of negligence that

increased the risk of injury."[2] In an action, as here, brought under the safe-place statute, an owner or general contractor can owe a duty to the employees of a subcontractor as "frequenters" but that duty arises ". . . only if the owner or general contractor has reserved a right of supervision and control."[3]

As to an action brought as a "frequenter" against a general contractor under the safe-place statute, it is retention of control and supervision that is required for recovery against the general contractor by an employee of a subcontractor. Spelling out what is required for such finding of retention of control, our court recently ruled:

"There is no duty on the part of a general contractor to superintend the activities of the employee of a subcontractor. Ordinarily, as in the case of an owner hiring an independent contractor to do work on his building, the [general] contractor reserves no right or control of the work excepting that of inspection or of changing the plan with reference to the construction to be furnished. That alone is not enough to make such owner or such general contractor liable for a frequenter's injury while such frequenter was acting in the scope of his employment for someone other than such owner or general contractor. . . . The test our court has stated is whether the owner, or here the general contractor, 'stood in the shoes of the [immediate] employer by reason of his retention of control of the premises.' Even a retained right to check as to compliance with specifications, and to stop construction progress for lack of compliance with specifications, our court has held, is not an exercise of control over how the actual manner in which the specifications were complied with."[4]

Additionally, and in the same recent case, this court has made clear that there is no duty on the part of a

[2] *Barth v. Downey Co., Inc.* (1976), 71 Wis. 2d 775, 783, 239 N. W. 2d 92.

[3] *Id.* at page 779.

[4] *Id.* at pages 780, 781.

general contractor to provide proper tools and equipment for the performance of the work a subcontractor has contracted to perform. Of the attempt in that case to establish such duty, our court said: "That puts the shoe on the wrong foot. That duty to furnish safe equipment is on the immediate employer. As this court has held, the responsibility for providing tools and equipment, such as ladders or scaffolds, is on the employee's immediate employer."[5] The situation would be different, we there noted, ". . . if the general contractor had loaned equipment for use by the subcontractor's employees for then it might have a liability deriving from its having furnished defective or unsafe equipment that resulted in injury."[6]

The exact and limited duty owed by a general contractor to an employee of a subcontractor as "frequenter" under the safe-place statute is thus made clear. What is not clear is how, on this record, that law can be applied to the issue of causation or was applied to the issue of the negligence of this general contractor. In its instructions to the jury the trial court made no mention of the necessity of a retention of control and supervision on the part of the general contractor as a prerequisite to a finding of negligence against such general contractor. Nowhere in the instructions was the difference owed by a general contractor and employer-subcontractor as to an employee of the subcontractor explained. The jury was told of the administrative code provision[7] concerning the blocking required under scaffold footings but nowhere in the instuctions was the jury told that such provision applied only to the immediate employer-subcontractor and not to the general contractor.[8] While the instruction

---

[5] *Id.* at page 781.

[6] *Id.* at page 782.

[7] *See:* Sec. IND 35.11 (3), Wis. Adm. Code.

[8] *Lovesee v. Allied Development Corp.* (1969), 45 Wis. 2d 340, 348, 173 N. W. 2d 196, this court holding: "Since Allied was not the immediate employer of Lovesee, the Administrative Code

as to the reach of the administrative code provision was incorrect as a statement of the law of this state, we are more concerned here with what the instructions did not state than with what they did state. Nowhere in such instructions was this jury informed of the precise duty owed by this general contractor, a prerequisite to a jury finding that such duty owed had been breached. Under these circumstances, we hold that ". . . the real controversy was not resolved by the questions put to the jury and that, in the interest of justice, a new trial should be held."[9] It appearing to us that the real controversy has not been fully tried, we set aside the judgment entered and remand the case for a new trial in the interest of justice.[10] While this is a reversal, since the reason for reversal is not the one briefed and argued by appellant on this appeal, no costs will be awarded either party.

*By the Court.*—Judgment reversed and cause remanded for a new trial consistent with this opinion. No costs to either party.

---

[See: secs. IND 35.01 and 35.10] was not applicable to it so far as Lovesee was concerned and its control of the premises for this purpose was not relevant."

[9] *Kiggins v. Mackyol* (1968), 40 Wis. 2d 128, 135, 161 N. W. 2d 261.

[10] Sec. 251.09, Stats.