BARRONS, and another, Plaintiffs, v. J. H. FINDORFF & SONS, INC., and another, Defendants: UNITED STATES STEEL CORPORATION, Third-Party Defendant-Appellant: REINKE & SCHOMANN, INC., Third-Party Defendant-Respondent.

Supreme Court

*No. 76–666. Argued April 30, 1979.—Decided May 30, 1979.*
(Also reported in 278 N.W.2d 827.)

For the appellant there were briefs by *Gilbert W. Church, Robert L. Binder* and *Foley & Lardner,* of Milwaukee, and oral argument by *Gilbert W. Church* and *Robert L. Binder.*

For the respondent there was a brief by *William P. Croke, John E. Feldbruegge, Terrence C. Thom* and *Prosser, Wiedabach & Quale, S. C.,* of Milwaukee, and oral argument by *Mr. Croke.*

CONNOR T. HANSEN, J.   This case arose as a result of an accident in which Thomas E. Barrons, an employee of Merle A. Patnode Company, a subcontractor of Reinke & Schomann, Inc., was injured while working on a construction project. The action of Barrons for damages for personal injuries he sustained has been settled and therefore is not involved in this appeal.

The appeal concerns the general contractor, three subcontractors and two indemnity agreements. The parties to the appeal are two of the subcontractors, United States Steel Corporation, third-party defendant and appellant, and Reinke & Schomann, Inc., third-party defendant and respondent.

J. H. Findorff & Sons, Inc., as general contractor for the construction of an office building in Madison, Wisconsin, subcontracted specialty steel work to the United States Steel Corporation. United States Steel furnished the steel but subcontracted the work to Reinke & Schomann, Inc. Reinke & Schomann subcontracted the caulking work to the Merle A. Patnode Co. The plaintiff in the original action was Thomas E. Barrons, an employee of Patnode.

Barrons was injured when a rope which held the scaffold on which he was working broke. He was not wearing a safety belt or line as required by the Department of Industry, Labor & Human Relations rules. In addition, the rope in question had been damaged by acid used to wash down the building walls because splash guards, also required by ILHR Department rules, had not been used. As a result of the fall Barrons was totally disabled and became a paraplegic. Following his workmen's compensation award Barrons brought an action against the rope manufacturer and against Findorff for common-law negligence and safe-place statute violations.[1]

Findorff had an indemnity agreement with its subcontractor, United States Steel Corporation, and commenced a third-party action against United States Steel seeking indemnification under its contract. United States Steel also had an indemnity agreement with its subcontractor, Reinke & Schomann, Inc. Therefore, United States Steel tendered the defense of the third-party action Findorff had commenced against it to Reinke & Scho-

---

[1] Sec. 101.11, Stats.

mann, Inc., whose insurer rejected the tender. Upon refusal of the tender, United States Steel proceeded to defend the action but kept Reinke & Schomann and its insurer fully advised of all proceedings and settlement negotiations in the principal action.

Findorff, United States Steel and the rope manufacturer ultimately settled with Barrons for $160,000. Findorff and United States Steel each paid $75,000 and the rope manufacturer paid $10,000.

United States Steel then proceeded with its indemnity claim by impleading Reinke & Schomann, Inc., and this action is the subject matter of this appeal. The case was submitted to the trial court on a stipulated statement of issues and facts.

The trial court found that the settlement was reasonable and that the indemnity agreement between United States Steel and Reinke & Schomann would cover attorney's fees. The trial court also found that because United States Steel had tendered the defense to Reinke & Schomann and had offered the settlement for its approval, United States Steel had only to show potential, not actual, liability to prove a right to indemnity. However, the trial court concluded that United States Steel had not shown potential liability because, as stipulated, United States Steel was not itself negligent and, under the terms of its contract with Findorff, it could not be required to indemnify Findorff for Findorff's own negligence. The trial court concluded that United States Steel had made the settlement as a volunteer because United States Steel was not negligent and was not liable for the negligence of Findorff and therefore that Reinke & Schomann, Inc., could not be required to indemnify United States Steel. The trial court dismissed the third-party complaint of United States Steel, and this appeal follows.

The parties to this appeal raise a number of issues and each frame the issues in different language. We have

considered all the issues presented and conclude the dispositive issue is whether Reinke & Schomann, Inc., is required by the terms of its indemnity agreement with United States Steel to indemnify United States Steel for the $75,000 it contributed to the settlement of the action commenced by Barrons.

The answer to this question depends upon whether, under the terms of the indemnity agreements, United States Steel would have been required to indemnify Findorff for any judgment against Findorff in favor of Barrons.

The contract of indemnity between Findorff and United States Steel contained the following provision:

"ARTICLE XV. Sub-Contractor shall indemnify and save harmless the Owner, Architect and Contractor against any and all claims and demands for damages to the property of any person, firm or individual and for personal injuries (including death) arising out of or caused in whole or in part, by the execution of the Work, or caused, in whole or in part, by any fault or neglect of Sub-Contractor or its agents, servants and employees, whether the damages or injuries be sustained by any employee of Sub-Contractor, Contractor, Owner or Architect, or otherwise, and whether said claims or demands arise or are made under any provision of any workmen's compensation act or other law or statute, or otherwise. Contractor shall give Sub-Contractor prompt notice of any such claims or demands and shall give Sub-Contractor the opportunity to co-operate in the defense and settlement thereof and Sub-Contractor shall reimburse Contractor for all expenditures made therein by Contractor. Until completion and final acceptance of the Work, Sub-Contractor shall secure and pay for Workmen's Compensation on Sub-Contractor's employees as required by law and shall maintain liability insurance against all claims for damages for personal injury or death suffered by persons other than employees and growing out of the execution of the Work. The Sub-Contractor agrees to carry property damage insurance in such amounts as are deemed necessary by the Contrac-

tor and such other insurance as might be required by the specifications. All insurance shall be carried in a company or companies acceptable to Contractor, and as to liability insurance in amounts satisfactory to Contractor. Sub-Contractor agrees to reimburse the Contractor for any contribution which the Contractor is compelled by law to make on account of Sub-Contractor's employees. Before commencing the Work Sub-Contractor shall furnish a certificate from his insurance carrier showing that he has complied with the foregoing provisions of this article and providing that the said insurance policies will not be changed or cancelled during their term until after written notice to Contractor. In the event of failure of Sub-Contractor to furnish and maintain such insurance, Contractor shall have the right to take out and maintain the said insurance for and in the name of Sub-Contractor, and Sub-Contractor agrees to pay the cost thereof and to furnish all necessary information to permit Contractor to take out and maintain such insurance for the account of Sub-Contractor. Compliance by Sub-Contractor with the foregoing requirements as to carrying insurance and furnishing certificates shall not relieve Sub-Contractor from liability under this article."

This contract was incorporated by reference into the contract between United States Steel and Reinke & Schomann, Inc.:

"WHEREAS, Subcontractor has agreed, for and in the stead of U.S. Steel, to fulfill and perform the part of the prime contract that is hereinafter described, and

"WHEREAS, Subcontractor has read and is familiar with all of the terms and conditions of the prime contract and with the respective rights, obligations and liabilities of U.S. Steel and Owner thereunder:

and

"2. In the performance of this subcontract, Subcontractor shall fully comply with and discharge all of U.S. Steel's obligations and liabilities under the provisions of the prime contract, except such as do not apply to Sub-

contractor's work hereunder, and said prime contract is hereby incorporated herein and made a part hereof by reference . . ."

The contract between United States Steel and Reinke & Schomann, Inc., also contained the following indemnity provision:

"17. Subcontractor shall assume and pay all claims, demands and liabilities for injuries to and deaths of persons and for damages to and loss of property caused or occasioned by acts or omissions of Subcontractor, its employees, representatives and subcontractors, in connection with or relating to the performance of this subcontract and hereby agrees to indemnify, save harmless and defend U.S. Steel and Owner from and against any and all claims, demands, costs, losses and actions resulting from the failure of Subcontractor to pay and discharge all such claims, demands and liabilities or resulting from the use by Subcontractor of any equipment, tools, facilities or other property of U.S. Steel or Owner."

and further provided,

"18. The safety of all persons employed by Subcontractor and his subcontractors on Owner's premises, or any other person who enters upon Owner's premises for reasons relating to this contract, shall be the sole responsibility of Subcontractor. Subcontractor shall at all times maintain good order among his employees and shall not employ on the work any unfit person or anyone not skilled in the work assigned to him. Subcontractor shall confine his employees and all other persons who come onto Owner's premises at Subcontractor's request or for reasons relating to this subcontract and his equipment to that portion of Owner's premises where the work under this subcontract is to be performed or to roads leading to and from such work sites, or to any other areas which Owner or U. S. Steel may permit Subcontractor to use.

"Subcontractor shall take all reasonable measures and precautions at all times to prevent injuries to or the death of any of his employees or any other person who enters upon Owner's premises. Such measures and pre-

cautions shall include, but shall not be limited to, all safeguards and warnings necessary to protect workmen and others against any conditions which could be dangerous and to prevent accidents of any kind whenever work is being performed in proximity to any moving or operating machinery, equipment or facilities, whether such machinery, equipment or facilities are the property of or being operated by the Subcontractor, his subcontractors, U. S. Steel, the Owners or other persons."

The contract between Findorff and United States Steel was expressly incorporated by reference in the contract between United States Steel and Reinke & Schomann, Inc. Under the terms of this contract, Reinke & Schomann, Inc., assumed all obligations of United States Steel under its contract with Findorff. Therefore, in resolving this particular case, whether or not United States Steel was actually negligent is of no consequence.

This court has repeatedly held that indemnity agreements are valid and are not against public policy. *Spivey v. Great Atlantic & Pacific Tea Co.*, 79 Wis.2d 58, 63, 255 N.W.2d 469 (1977); *Mustas v. Inland Construction, Inc.*, 19 Wis.2d 194, 205, 120 N.W.2d 95, 121 N.W.2d 274 (1963). One party may indemnify another against liability for the indemnitor's acts and those of his employees, agents and subcontractors as well as against liability for the indemnitee's own acts. The agreement will be broadly construed where indemnity is sought for liability based on the indemnitor's negligence but will be strictly construed where the indemnitee is the negligent party. *Baker v. McDel Corp.*, 53 Wis.2d 71, 76, 191 N.W.2d 846 (1971). The court will not allow an indemnitee to be indemnified for his own negligent acts absent a clear and unequivocal statement to that effect in the agreement. *Spivey, supra*, at 63; *Baker, supra*, at 76. However, even in the absence of such specific language the court will construe the

agreement to provide such indemnity if that is the only reasonable construction. *Spivey, supra*, at 64.

In *Hartford Acc. & Ind. Co. v. Worden-Allen Co.*, 238 Wis. 124, 297 N.W. 436 (1941), a building owner's insurer sought indemnity from a subcontractor for damages paid by the insurer in a safe-place action brought by the subcontractor's employee. The contract between the owner's general contractor and the subcontractor contained the following clause:

" 'In accepting this order you agree to indemnify, reimburse and save harmless the owner and us of and from all loss and damage to person or property and all claims, suits or demands arising from damages or injuries to you and your employees, ourselves and our employees, the owner and his employees, other contractors and their employees, and the general public, due to arising from, or connected with your operations on this job.' " *Id.* at 127.

The subcontractor's employee had been injured because the subcontractor failed to comply with a safety order concerning the operation of a boom. The owner was found liable under the safe-place statute because it had failed to move some power lines. This court concluded:

". . . If the indemnity is to mean anything, it must include situations in which Seaman has sustained a liability by reason of the building operations. It may very well be that if the injuries had arisen solely out of Seaman's default in some respect, and were not in any way attributable to Worden, there would be no liability under the indemnity agreement. Here, however, the active negligence was that of Worden. Liability of Seaman was predicated upon a failure to furnish a safe place of employment, and there was a default in this respect only because of Worden's operations on the premises. In point of fact, the premises were only unsafe as to Worden's employees. Upon the former appeal liability of Seaman was grounded by this court on the fact that Seaman remained in possession of the premises, and

under these circumstances it could not delegate either to Permanent or Worden its duties under the safe-place statute. It appears to us that the liability of Seaman here is precisely the sort that was contemplated under the indemnity contract, and that to hold that it is not is to render the indemnity meaningless. The indemnity contract presupposes a liability by Seaman to employees, frequenters, and others. Defendant suggests several situations in which it asserts that the indemnity can still have meaning even if construed to eliminate liability where the indemnitee negligently contributes to the injuries referred to by it. The first is that it may have been intended to cover liability arising out of nondelegable duties, where in fact the fault was wholly that of Worden, but because of a nondelegable character of the duty Seaman would sustain a liability without actual fault. In such a situation, however, there would be no need for an indemnity contract because Seaman would be entitled without it to complete indemnity from Worden. *Zulkee v. Wing*, 20 Wis. *408.

". . . We have been able to discover no situation in which the indemnity contract would have any meaning or purpose if it were not to cover such a default by Seaman as is here involved. As we have heretofore suggested, it may be that the contract does not cover cases in which the sole proximate cause of the injuries resulted in Seaman's liability were defaults on the part of Seaman wholly uncontributed to by Worden. . . ." *Id.* at 129, 130.

On the other hand, in cases involving parties other than a lessor and lessee, where the indemnitor is not negligent and the indemnitee is the sole actively negligent cause of the injury this court has held to the strict construction rule. Also, where both the indemnitor and indemnitee have been found to be actively negligent the court has also held to the strict construction rule and refused to allow indemnity for the indemnitee's negligence in the absence of clear language to that effect. *See, e.g., Bialas v. Portage County*, 70 Wis.2d 910, 236 N.W.2d 18 (1975); *Brown v. Wisconsin Natural Gas*

*Co.,* 59 Wis.2d 334, 208 N.W.2d 769 (1973); *Baker, supra.*

However, when an action is based upon a safe-place statute duty the indemnitor will be required to indemnify the indemnitee to the extent of the indemnitor's share of the total liability, creating an effect identical to that of contribution. *Young v. Anaconda American Brass Co.,* 43 Wis.2d 36, 168 N.W.2d 112 (1969). Reinke & Schomann would distinguish *Young v. Anaconda American Brass Co.* because Ballard, the indemnitor, was found to be 20 percent negligent for failure to provide a safe place for Young, its employee, to work, whereas in the instant case it was stipulated that the indemnitor, United States Steel, was not negligent. We believe such an argument begs the question. The fact is that Barrons was injured as a result of the negligence of his employer, Merle A. Patnode Co., which was the subcontractor for Reinke & Schomann, Inc. By their contract of indemnification Reinke & Schomann, Inc., agreed to indemnify United States Steel and Findorff from acts of negligence of its employees or agents.

Therefore, because the liability question under the Findorff-U. S. Steel indemnification contract was settled rather than tried, United States Steel need only to show potential liability to recover on its indemnity contract with Reinke & Schomann, Inc. The trial court correctly considered and applied this rule as it is enunciated in *Parfait v. Jahncke Service, Inc.* 484 Fed.2d 296 (5th Cir. 1973), and *Morrissette v. Sears, Roebuck & Co.,* 114 N.H. 384, 322 Atl.2d 7 (1974). In *Parfait* the court said that an indemnitee that had given the indemnitor the choice of approving the settlement or taking over the defense of the action need only show potential, rather than actual, liability to the plaintiff and that

the settlement was reasonable. The trial court in the instant case found that the settlement was reasonable in amount and that finding is not disputed by Reinke & Schomann, Inc.

The issue is whether, in consideration of the general indemnity principles stated herein, United States Steel has shown potential liability on its indemnity contract with Findorff so as to establish a right to indemnity on its indemnity contract with Reinke & Schomann, Inc. United States Steel contends that it need only show that it acted reasonably in settling in order to recover. Reinke & Schomann, Inc., argues that potential liability means the likelihood of liability on the contract and not merely a reasonable apprehension of liability.

The Findorff-U. S. Steel indemnity agreement does not contain language clearly requiring United States Steel to indemnify Findorff for liability occasioned by Findorff's own negligence. The agreement can be reasonably construed to require indemnity for United States Steel's negligent acts and those of its employees and agents. Since the parties stipulated that United States Steel was not negligent any right to indemnity must be based on the negligent acts of United States Steel's employees or agents.

Clearly Barron's injury was caused by negligence and a settlement was made for that injury. The question is whose negligence caused the injury and occasioned the settlement. The facts establish that Patnode, his employer, was negligent in violating safety rules relating to the use of splash guards and safety belts. The parties stipulated that United States Steel and Reinke & Schomann, Inc., were not negligent.

Barrons alleged both common-law negligence and a safe-place statute violation in his complaint against Findorff. The stipulation contained the following facts which related to Findorff's conduct:

"13. Findorff personnel acknowledged at adverse examinations that if they had noted any unsafe practices on the part of subcontractors their general custom was to order that such practices cease.

". . .

"15. On the day of the accident Barrons had observed several persons in white shirts and thought they might be inspectors, but did not know who they were or where they were from. There was no further evidence developed before trial as to who these individuals were, who they were employed by, or what their function on the jobsite was. Barrons observed these men just as he was climbing onto the scaffolding."

This court considered a general contractor's duty to a subcontractor's employee in *Lemacher v. Circle Const. Co., Inc.*, 72 Wis.2d 245, 240 N.W.2d 179 (1976). For a common-law negligence cause of action the general contractor must commit an affirmative act of negligence that increases the risk of injury. Under the safe-place statute the general contractor has a duty to a subcontractor's employee, in this case the employee of Patnode, a subcontractor of Reinke & Schomann, if the contractor has reserved a right of supervision and control over the employee. In *Lemacher* the court also said that the immediate employer had the duty to furnish safe equipment and to comply with administrative code provisions regarding scaffolding. In *Barth v. Downey Co., Inc.*, 71 Wis.2d 775, 239 N.W.2d 92 (1976), the court distinguished a general contractor's reservation of the right of inspection from control over the manner in which the work is performed, with only the latter type of control sufficient to create a safe-place duty. The same distinction was made in *Berger v. Metropolitan Sewerage Comm.*, 56 Wis.2d 741, 203 N.W.2d 87 (1973).

No affirmative act of negligence is alleged to have been committed by Findorff so the common-law negli-

gence action would fail. The potential negligence of Findorff lay in its failure to discover and take action in regard to Patnode's safety violations. From the facts given it can reasonably be inferred that Findorff retained sufficient control over the construction site to require Patnode to correct these violations and therefore subject Findorff to potential liability under the safe place cause of action.

Because the liability of Findorff would be limited to negligence under the safe place statute and because that liability would be incurred on account of the failure of Patnode, the subcontractor of Reinke & Schomann, Inc., to comply with safety regulations, the fact situation is similar to that in *Young v. Anaconda American Brass Co., supra,* and *Hartford Acc. & Ind. Co. v. Worden-Allen Co., supra.* The safe-place duty is nondelegable and Findorff would therefore be liable to Barrons for its own safe-place duty. Both *Hartford* and *Young* recognize a distinction between affirmative acts of negligence which require a clear intent to indemnify in the contract and negligence under the safe-place statute consisting of a failure to discover and remedy a subcontractor's negligent acts.

We observe that *Hartford Acc. & Ind. Co. v. Worden-Allen Co., supra,* uses the terms active and passive to distinguish between the negligence of the general contractor and the subcontractor. This court has since withdrawn from this general use of these terms. In *Pachowitz v. Milwaukee & S. Transport Corp.,* 56 Wis.2d 383, 388, 389, 202 N.W.2d 268 (1972), when discussing the passive-active distinction, this court said:

"We would find the same difficulty in requiring an 'actively' negligent co-tort-feasor who is five percent causally negligent to pay 100 percent of the loss, excusing entirely from liability the 'passively' negligent

co-tort-feasor who is 95 percent negligent. A distinction can be made between 'active negligence' and 'passive negligence.' But the dividing line is blurred. (It is difficult to see how it would be applicable to the claims of negligence involved in the case before us.) This court, in reaffirming the substantial-factor test in determining legal cause, rejected the passive-active distinction so far as the issue of causation is concerned, and showed little enthusiasm for the passive-active distinction.

"    . . . .

". . . [W]e now reject the invitation to establish a distinction between 'passive' and 'active' negligence as a basis for indemnity between co-tort-feasors. . . ."

In the instant case the causal negligence on the part of Patnode was a failure to use the required splash guards and safety lines. The potential liability of Findorff lies in its failure to discover and correct Patnode's omission. The distinction between these separate negligent omissions was that under the safe-place statute as immediate employer Patnode had the duty to provide safe equipment and comply with safety rules, whereas, the duty of Findorff was to require Patnode to correct any discovered safety violations. Contrary to respondent's contention, Findorff did not attempt to delegate its nondelegable safe-place duty. Findorff recognized its liability to Barrons and settled that claim for $75,000, and is not a party to this appeal.

A general contractor can only be held liable to an injured workman for an affirmative act of negligence or for a failure of duty under the Safe Place Act. The contractor could not be indemnified for the affirmative act of negligence in the absence of a clear statement to that effect. If the strict construction rule were also applied to safe-place liability, in those instances where the negligence of the subcontractor-employer was a substantial factor in causing the injury, agreements such as those here would be no protection for the contractor. If a subcontractor negligently injured one of its em-

ployees in a manner that did not also create a potential safe-place cause of action, the general contractor, of course, would not be liable. If these indemnity clauses are to be given any effect at all, where, as here, the general contractor has given the subcontractor, in this case United States Steel, complete responsibility for a phase of the construction, the indemnity clause must be construed to require indemnity where the general contractor is liable only because the subcontractor created a potential liability in a safe-place cause of action.

Here Reinke & Schomann expressly agreed to assume responsibility for the negligent acts of its subcontractors and to indemnify both United States Steel and Findorff against liability for such acts. Patnode, Reinke & Schomann's subcontractor was negligent. Because of this negligence a safe-place cause of action existed for which Findorff was sued and which subjected Findorff to potential liability. Under the terms of its agreement, Reinke & Schomann, Inc., was liable to both Findorff and United States Steel. Findorff chose to seek indemnity from United States Steel rather than from Reinke & Schomann, Inc. United States Steel had to seek indemnity from Reinke & Schomann, Inc, but as the indemnity clause does not distinguish between liability based on contract and liability based on tort the fact that United States Steel was seeking indemnity for its contractual liability to Findorff would make no difference. United States Steel was seeking indemnity for a claim resulting from the failure of its subcontractor, Reinke & Schomann, Inc., to pay a claim occasioned by the acts of Patnode, its subcontractor. Indemnity clauses in contracts which pass along total responsibility for certain construction work are reasonably intended to pass along the financial responsibility for negligent acts occurring in the course of that construction. Any other interpreta-

tion would make the clause meaningless. The trial court's conclusion that because United States Steel was not itself negligent it could not be required to indemnify Findorff ignores the fact that United States Steel expressly assumed total responsibility for the steel construction work, including the negligent acts of its employees and agents. That United States Steel considered itself responsible for the risks attending this construction is evidenced by the fact that its indemnity contract with Reinke & Schomann clearly passes this responsibility along. To permit United States Steel to escape liability because it was not negligent would require a general contractor to secure a separate indemnity agreement from every subcontractor in a construction project rather than protect itself through agreements with its immediate subcontractors and allow them to allocate the risks as they chose.

Under the circumstances presented here, Reinke & Schomann, Inc., cannot avoid its clear assumption of liability for injuries negligently caused by its subcontractor merely because the employee chose to sue only Findorff and the rope manufacturer and Findorff chose only to sue United States Steel.

We are of the opinion the trial court erred as a matter of law when it entered judgment dismissing the third-party complaint against Reinke & Schomann, Inc., and that judgment should have been properly entered against Reinke & Schomann, Inc., in the amount of $75,000.

In the stipulation before the trial court, the parties stipulated that the amount of legal fees and services expended by United States Steel in defense and settlement of the action up to that time was reasonable. The trial court found that under the indemnity agreements United States Steel should not be denied its reasonable attorney's fees if the third-party action lay

against Reinke & Schomann, Inc. In reaching this conclusion the trial court relied upon the terms of the indemnity contract and the precedent of *Huset v. Milwaukee Dressed Beef Co.*, 46 Wis.2d 317, 327, 174 N.W.2d 740 (1970); and *Fidelity & Casualty Co. v. Johnson*, 190 Wis. 199, 208 N.W. 791 (1926).

We agree with the conclusion of the trial court that the allowance of reasonable attorney's fees and expenses incurred by United States Steel in defense of the action is encompassed within the terms of the indemnity contract and the payment of such fees and expenses is an obligation of Reinke & Schomann, Inc. Once the trial court has determined the reasonable amount of such fees and expenses such sums should be included in the judgment.

It is therefore our conclusion that the judgment be reversed and the cause remanded with directions to enter judgment in favor of United States Steel Corporation against Reinke & Schomann, Inc., in the amount of $75,000, together with reasonable attorney's fees and expenses.

The indemnity contract has been construed to cover the reasonable litigation expenses of United States Steel. Since the stipulation before the trial court set forth the amount of such expenses as of the date thereof, the trial court is authorized to determine the reasonable fees and expenses incurred since the date of the stipulation.

*By the Court.*—Judgment and order reversed and cause remanded for further proceedings consistent with this opinion.