Time Warner, Inc., and Travelers Indemnity Company and Its Subsidiaries, Plaintiffs-Appellants,

v.

St. Paul Fire and Marine Insurance Company and Cable Cops, Inc., a foreign corporation, Defendants-Respondents.

Court of Appeals

*No. 00–2108. Submitted on briefs May 2, 2001.—Decided July 24, 2001.*

2001 WI App 174

(Also reported in 633 N.W.2d 640.)

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *Donald H. Carlson* and *Jon E. Fredrickson,* of *Crivello, Carlson, Mentkowski & Steeves, S.C.,* of Milwaukee.

On behalf of the defendants-respondents, the cause was submitted on the brief of *Douglas S. Knott,* of *Leib and Katt, S.C.,* of Milwaukee.

Before Wedemeyer, P.J., Fine and Schudson, JJ.

¶ 1. SCHUDSON, J. Time Warner, Inc., and its insurer, Travelers Indemnity Company and its Subsidiaries (collectively, "Travelers"),[1] appeal from the circuit court's grant of summary judgment in favor of Cable Cops, Inc., and its insurer, St. Paul Fire & Marine Insurance Company (collectively, "St. Paul"),[2] and from the circuit court order addressing Travelers' motion for reconsideration and affirming the summary judgment.

¶ 2. Travelers argues that the circuit court "must be reversed because Cable Cops is contractually required to indemnify Time Warner for the liability Time Warner assumed under it's [sic] indemnification agreement," with Wisconsin Electric Power Company (WEPCO), for negligence and safe-place-statute claims an independent contractor working for Cable Cops filed against WEPCO for injuries he suffered while working on a WEPCO utility pole. We affirm.

## I. BACKGROUND

¶ 3. In 1993, Time Warner and WEPCO entered into a contract authorizing Time Warner to install cable television attachments on WEPCO's utility poles. Under the contract, Time Warner agreed to indemnify WEPCO for any liability as a result of "injury to . . . persons . . . arising either directly or . . . proximately caused by the erection, maintenance, repair, presence, use or removal of [Time Warner]'s attachments or the

---

[1] In this opinion, Time Warner, Inc., individually, will be referred to as "Time Warner." Travelers Indemnity Company and its Subsidiaries, individually, will be referred to as "Travelers Indemnity."

[2] In this opinion, Cable Cops, Inc., individually, will be referred to as "Cable Cops." St. Paul Fire & Marine Insurance Company, individually, will be referred to as "St. Paul Insurance."

proximity of the respective cables, wires and appurte-
nances of the parties hereto, or by any act or omission
of [Time Warner] on or in the vicinity of the poles of
[WEPCO]." Time Warner also agreed to carry compre-
hensive general liability insurance to protect WEPCO
"from and against any and all claims, demands, actions,
judgments, costs, appeal bond premiums, expenses,
legal fees and liabilities which may arise or result,
directly or indirectly, from or by reason of loss which
arises from [Time Warner]'s actions or inactions, acci-
dent, death, injury or damage to any person." Pursuant
to the contract, Time Warner obtained commercial
general liability insurance from Aetna Casualty and
Surety Company;[3] WEPCO was listed as a certificate
holder for the policy.[4]

¶ 4. The Time Warner/WEPCO contract included
certain exceptions to the indemnity obligations. The
relevant portion of Article V states:

> D. The indemnities hereby furnished [by Time
> Warner to WEPCO] shall include the payment of any

---

[3] Because Aetna Casualty and Surety Company later
merged with Travelers Indemnity Company, we will use "Trav-
elers Indemnity" to encompass Aetna Casualty and Surety
Company.

[4] In our discussion, we attempt to carefully keep the players
straight. The following program, however, should help the
reader follow the play-by-play:

WEPCO – owns the utility poles

Time Warner – contracts with and indemnifies WEPCO

Travelers Indemnity: Time Warner's indemnity insurer

Cable Cops – contracts with and indemnifies Time Warner

St. Paul Insurance: Cable Cops' indemnity insurer

judgment rendered, or civil penalty imposed, against [WEPCO], its agents and employees as a result of:

. . . .

2. Any other occurrence related either directly or is [sic] proximately caused by the erection, maintenance, repair, presence, use or removal of [Time Warner]'s attachments, *except where such occurrence results from the sole negligence* or intentional action *of [WEPCO],* the sole negligence or intentional acts of any other licensees or solely from the joint negligence of [WEPCO] and/or other licensees.

(Emphasis added.)

¶ 5. In 1994, Time Warner (doing business as "Cablevision") contracted with Cable Cops, authorizing Cable Cops to install "cable traps" on WEPCO poles. Cable Cops, in turn, agreed to indemnify Time Warner. As relevant to this appeal, the Time Warner/Cable Cops contract provided:

4. [Cable Cops] agrees to hold harmless [Time Warner] from any liability or claims, demands, suites [sic], costs, and fees in connection with the installations . . . which shall include damage to property, real or personal, and also agrees to hold harmless [Time Warner] from any liability or claims, demands, suites [sic], costs and fees to persons owning said property for any injury resulting from the . . . installations. To this end, [Cable Cops] agrees to carry liability insurance. . . . All such coverage will name [Time Warner] as the additional insured.

Accordingly, Cable Cops added Time Warner as an additional insured on the insurance policy it carried with St. Paul Insurance.

¶ 6. On December 15, 1994, Marty B. Wardman, an independent contractor working for Cable Cops, was injured while working on a WEPCO pole. Alleging that he "received an electrical shock from a live power line, causing him to be thrown from the power pole and land on the pavement below, suffering severe injuries," Wardman and his wife and children filed an action— against WEPCO, only. The Wardmans' two claims alleged: (1) negligence, for WEPCO's failure "among other things . . . to properly inspect, repair and maintain the power line"; and (2) safe-place-statute violations. The safe-place-statute claim alleged:

> The power pole on which [Wardman] was injured was a place of employment within the meaning of [Wis. Stat. §] 101.11 . . . and . . . WEPCO . . . had a duty pursuant to statute to furnish and use safety devices and safeguards; to adopt and use methods and processes reasonably adequate to render the power pole as safe as its nature reasonably permitted; to construct, repair and maintain said power pole, so as to render it safe and to do every other thing reasonably necessary to protect the life, health, safety and welfare of [Wardman].

The safe-place-statute claim also alleged that WEPCO "negligently failed to make said power pole as safe as its nature reasonably permitted as required by [Wis. Stat. §] 101.11 . . . and was otherwise negligent."[5]

---

[5] Wisconsin Stat. § 101.11(1) (1993–94) provided, in relevant part:

> Every employer . . . shall furnish and use safety devices and safeguards, and shall adopt and use methods and processes reasonably adequate to render such employment and places of employment safe, and shall do every other thing reasonably necessary to protect the life, health, safety, and welfare of such employe[e]s and frequenters. Every employer and every owner of a place of

¶ 7. WEPCO tendered its defense of the Wardman claims to Time Warner and St. Paul Insurance, pursuant to the Time Warner/WEPCO contract. Counsel for Time Warner, in a letter to counsel for WEPCO, "respectfully decline[d] such tender of defense . . . by virtue of the provisions of [the contract] set forth in Article V.D.2." The letter quoted the exceptions to the indemnity obligations and then continued:

> The allegations of the complaint against [WEPCO] deal solely with the claim of negligence against [WEPCO]. There is no allegation that any other person or entity had anything to do with this particular incident. Of course, as the underlying claims of the plaintiffs are investigated and discovered, additional facts may become known which would impact upon the application of this exception to the indemnity obligations of that [Time Warner/WEPCO] Agreement. Consequently, Time Warner reserves the right to re-evaluate the tender of defense made by you on behalf of [WEPCO] during the course of the [Wardman] litigation and reassess its denial of your tender of defense from time to time. Time Warner may, at its option, seek to intervene in the lawsuit and seek a judicial determination of its contractual obligations under the subject agreement. However, at this point in time, Time Warner does not believe that it has any contractual duty or obligation to indemnify or save harmless [WEPCO] from the claims asserted against it by the plaintiffs in the [Wardman] action.[6]

(Footnote added.)

---

employment . . . now or hereafter constructed shall so construct, repair or maintain such place of employment . . . as to render the same safe.

[6] In addition to rejecting WEPCO's tender of defense of the Wardman claims, Time Warner, on April 10, 1996, tendered "the [WEPCO] claims asserted in [WEPCO's] tender of defense" to Cable Cops and St. Paul Insurance, pursuant to the installation contract agreement between Time Warner and Cable Cops. On

¶ 8. WEPCO did not implead Time Warner in the Wardman litigation, and no other developments caused Time Warner to accept WEPCO's tender. Nevertheless, while counsel for Time Warner and St. Paul Insurance maintained that Time Warner's indemnity obligation to WEPCO had not been triggered by the Wardman action, Time Warner's counsel advised WEPCO's counsel that WEPCO was a certificate holder for the Travelers Indemnity policy issued to Time Warner.[7] WEPCO then tendered its defense to Travelers Indemnity. Travelers Indemnity, despite Time Warner's position that its indemnity obligation to WEPCO had not been triggered, agreed to defend WEPCO. Travelers Indemnity then tendered its defense of WEPCO to St. Paul Insurance and Time Warner, pursuant to the Time Warner/Cable Cops installation contract. In response, counsel for Time Warner and St. Paul Insurance, in a letter to counsel for Traveler's Indemnity, acknowledged Cable Cops' indemnity agreement with Time Warner but declined Travelers Indemnity's tender, explaining:

> The meaning of this [Cable Cops/Time Warner installation contract] hold harmless provision is quite clear, and Cable Cops stands ready to hold [Time Warner] harmless for any claims lodged against it

April 15, 1996, St. Paul Insurance, via a commercial claims representative, agreed to defend Time Warner. Subsequently, however, counsel for St. Paul Insurance and Time Warner wrote to counsel for WEPCO, stating: "As I advised previously in my letter [of April 10, 1996], it is our position that Time Warner is not liable for the negligence of [WEPCO] and therefore decline [sic] your tender."

[7] Time Warner and St. Paul Insurance were represented by the same counsel regarding WEPCO's tender of defense of the Wardman claims; Time Warner, however, also retained additional counsel.

arising out of [the Wardman] action. However, in reviewing the [Wardman] Complaint, there are no allegations of negligence on the part of [Time Warner]; the only claims are against [WEPCO].

Therefore, since the pleadings are devoid of any claims of negligence or other liability against [Time Warner], Cable Cops' contractual obligation to hold [Time Warner] harmless is not triggered.

¶ 9. Travelers Indemnity proceeded to defend WEPCO in the Wardman action. Ultimately, the Wardman case reached a settlement under which Travelers Indemnity paid $300,000 on behalf of WEPCO. Travelers Indemnity then sought to recoup the $300,000, as well as all costs incurred in defense of the Wardman action.

¶ 10. Consequently, on October 26, 1998, Travelers brought the action underlying this appeal, alleging that St. Paul breached its duties to defend and indemnify. The circuit court, however, in its decision granting St. Paul's motion for summary judgment, concluded that "[b]ecause Wardman's allegations in the complaint raised claims based solely upon WEPCO's negligence and conduct, Time Warner had no duty to defend or indemnify WEPCO for WEPCO's own negligence."[8] The court explained:

[T]he indemnity agreement specifically excluded, from its coverage, claims based upon the sole negligence of

---

[8] The court also observed that "some confusion on Time Warner and Travelers' part as to whether WEPCO was an additional insured under the Travelers policy . . . may have lead [sic] Travelers to defend WEPCO and settle the case," despite the fact that, because of the "sole negligence" exclusion, Time Warner was not required to defend or indemnify WEPCO for WEPCO's own negligence.

WEPCO. . . . [A] complaint based upon the sole negligence of WEPCO did not give rise to a duty to defend on the part of Time Warner. Therefore, if there was no duty by Time Warner to defend WEPCO, there was no duty by St. Paul to defend Time Warner.[9]

(Footnote added.)

[9] Additionally, in recognition of Travelers' assertion that Marty Wardman might have been contributorially negligent, the court observed:

> The possible contributory negligence on the part of the person claiming an injury is not relevant in determining whether Time Warner had a duty under the indemnity contract.
>
> Moreover, if the court applied [Travelers'] contributory negligence interpretation, the duty to defend would not arise from the factual allegations in the complaint, but rather, from the answer to the complaint[,] which would assert contributory negligence. It would be a rare circumstance when WEPCO would not assert a contributory negligence defense. Such interpretation would render the clause excluding claims based upon the sole conduct of WEPCO virtually meaningless. This would not have been the parties['] intent.
>
> Therefore, the court concludes that [WEPCO's] possible [defense of] contributory negligence in the Wardman lawsuit would not convert the Wardman claim[, which is] excluded from the indemnity contract because [it] is based upon the sole negligence of WEPCO, into a claim covered under the agreement.

We do not embrace this portion of the trial court's analysis. As we have noted, "WEPCO did not implead Time Warner in the Wardman litigation, and no other developments caused Time Warner to accept WEPCO's tender." See ¶ 8, above. Further, no other developments implicated the possible negligence of any other person or party, *other than WEPCO.* In this opinion, therefore, we do not address whether an allegation of contributory negligence would alter the analysis.

¶ 11. Travelers moved for reconsideration of the summary judgment decision, pointing out that the court had failed to address its alternative argument regarding Cable Cops' duty to indemnify Time Warner under Time Warner/Cable Cops contract, and asking the court to rule upon that issue. Additionally, Travelers asked the court to "reconsider its ruling regarding St. Paul[ Insurance]'s duty to defend in light of the expansive contract language contained in St. Paul[ Insurance]'s insurance policy." The circuit court addressed the issues as requested by Travelers and confirmed its summary judgment decision.

## II. DISCUSSION

¶ 12. Reviewing a circuit court's grant of summary judgment, we apply the same methodology as that of the circuit court but review its decision *de novo*. *Capoun Revocable Trust v. Ansari*, 2000 WI App 83, ¶ 5, 234 Wis. 2d 335, 610 N.W.2d 129, *review denied*, 2000 WI 88, 237 Wis. 2d 253, 616 N.W.2d 115. Reviewing the summary judgment in this case, we must consider the circuit court's interpretation of certain contractual indemnity provisions. A circuit court's interpretation of a contract also is subject to our *de novo* review. *Woodward Communications, Inc. v. Shockley Communications Corp.*, 2001 WI App 30, ¶ 9, 240 Wis. 2d 492, 622 N.W.2d 756.

¶ 13. Travelers argues that it was "only required to show potential liability under its WEPCO indemnification agreement to recover on it's [sic] agreement with Cable Cops." Thus, it asks this court to reverse the circuit court decision and order summary judgment for full reimbursement of the settlement it paid, including the costs and attorney's fees incurred in defending

WEPCO, as well as for the additional costs and attorney's fees for pursuing indemnification.[10]

¶ 14. Travelers' argument for indemnification from St. Paul is premised on the "hold harmless" provision of the Time Warner/Cable Cops contract. That provision, however, holds Time Warner harmless "from any liability or claims, demands, suites [sic], costs, and fees in connection with the installations." But obviously, if *Time Warner* had no liability, and had no claims, demands, or suits filed against it, that provision would never come into play. Such is the circumstance here.

¶ 15. The Article V.D.2. exception in the Time Warner / WEPCO contract is clear: Time Warner had no duty to indemnify WEPCO for an "occurrence result-[ing] from the sole negligence . . . of [WEPCO]." The Wardman claims alleged the negligence of WEPCO, only. Without a claim in the Wardman suit triggering *Time Warner's* potential liability, Time Warner's obligation to WEPCO, under its indemnification agreement with WEPCO, was not engaged. And absent that, Cable Cops' obligation to Time Warner, under its indemnification agreement with Time Warner, simply was never engaged in this case.

---

[10] In the alternative, Travelers seeks summary judgment in its favor and requests: (1) reimbursement for all attorney's fees expended in defending WEPCO; (2) reimbursement of that portion of the $300,000 settlement equal to the percentage of negligence not attributable to WEPCO; (3) remand for trial on liability issues to determine the percentage of negligence not attributable to WEPCO; and (4) remand for a determination of the amount of attorney's fees tied to the pursuit of the indemnification action.

¶ 16. Nevertheless, Travelers offers two arguments that, it contends, trump the circuit court's rationale. First, Travelers argues:

> Both the trial court and [St. Paul] are mistaken as to the effect of the Time Warner/WEPCO sole negligence clause. As [St. Paul] ha[s] pointed out, the sole negligence clause is operative once a judgment is rendered. Where both the trial court and [St. Paul] have misread the contract is that the indemnification clause is **not** operative on the allegations in a complaint. It is operative upon a judgment rendered. This is so because only after a judgment is rendered has the apportionment of negligence been decided by the jury. Without such an apportionment of negligence, it is impossible to determine to what extent, if any, WEPCO would have been negligent.

In support of this argument, Travelers points out that the sentence in Article V.D.2. containing the "sole negligence" exclusion is preceded by the introductory words: "The indemnities hereby furnished shall include *the payment of any judgment rendered*, or civil penalty imposed, against [WEPCO], its agents and employees as a result of:" (Emphasis added.)

¶ 17. Travelers is stretching. A plain reading of the Time Warner/WEPCO contract reveals nothing that would suggest that the clause clarifying what the indemnities "include" somehow sets the limits of Time Warner's duties.

¶ 18. Second, Travelers argues that even if the circuit court correctly granted summary judgment with respect to the Wardmans' common-law-negligence claim, the court's rationale would not apply to the safe-place claim. Citing *Barrons v. J.H. Findorff & Sons, Inc.*, 89 Wis. 2d 444, 278 N.W.2d 827 (1979), Travelers maintains that "allegations in a complaint

regarding an indemnitee's safe[-]place negligence cannot be interpreted as the sole negligence of the indemnitee and operate to bar the application of the indemnity agreement."[11]

¶ 19. We have carefully considered *Barrons*. It is, in some respects, difficult to decipher. At first glance, its application to the instant case seems clear and, indeed, potentially controlling for Travelers. With a closer look, however, its application is complicated by the not-quite-parallel lines between the set of parties there and WEPCO, Time Warner, and Cable Cops here. Ultimately, we conclude, two distinctions between *Barrons* and the instant case tip the scales in St. Paul's favor.

¶ 20. In *Barrons*, J. H. Findorff & Sons, Inc., was the general contractor for the construction of an office building. *Id.* at 447. Findorff subcontracted the specialty steel work to United States Steel Corporation, which furnished the steel but subcontracted the work to Reinke & Schomann, Inc. *Id.* Reinke and Schomann, in turn, subcontracted the caulking work to the Merle A. Patnode Co. *Id.* Patnode employed Thomas E. Barrons, who was injured as a result of a fall that occurred when the rope holding the scaffold on which he was working broke. *Id.* In addition to suing the rope manu-

---

[11] Further, Travelers asserts that St. Paul has failed to respond to its argument on the Wardmans' safe-place claim. We are puzzled by St. Paul's failure to specifically respond to Travelers' safe-place argument. *See Charolais Breeding Ranches, Ltd. v. FPC Sec. Corp.*, 90 Wis. 2d 97, 109, 279 N.W.2d 493 (Ct. App. 1979) (unrefuted arguments deemed admitted). We do note, however, that Travelers, in its safe-place argument, offered only a brief analysis based on *Barrons v. J.H. Findorff & Sons, Inc.*, 89 Wis. 2d 444, 278 N.W.2d 827 (1979), and that St. Paul, within its general responses, addressed and attempted to distinguish *Barrons*.

facturer, Barrons sued Findorff for common-law negligence and safe-place-statute violations. *Id.*

¶ 21. Findorff had an indemnification agreement with U.S. Steel and filed a third-party claim against U.S. Steel pursuant to that agreement. *Id.* U.S. Steel had an indemnification agreement with Reinke & Schomann and, under that agreement, tendered the defense of Findorff's third-party action to Reinke & Schomann. *Id.* at 447–48. When Reinke & Schomann's insurer refused the tender, however, U.S. Steel defended the action. *Id.* Eventually, Barrons, Findorff, U.S. Steel, and the rope manufacturer settled. *Id.* at 448. U.S. Steel then pursued its indemnity claim by impleading Reinke & Schomann. *Id.*

¶ 22. In the trial court, it was stipulated that U.S. Steel "was not itself negligent and, under the terms of its contract with Findorff, it could not be required to indemnify Findorff for Findorff's own negligence." *Id.* The trial court concluded, therefore, that U.S. Steel's payment under the settlement was voluntary. *Id.* On appeal, the dispositive issue was whether, notwithstanding the fact that U.S. Steel was not negligent, and notwithstanding the fact that U.S. Steel was not required to pay anything, Reinke & Schomann was required, under its indemnity agreement with U.S. Steel, to indemnify U.S. Steel for U.S. Steel's payment under the settlement. *Id.* at 449.

¶ 23. Resolving that issue, the supreme court reiterated certain standards that strongly support St. Paul's argument that it owes Traveler's nothing because Traveler's Indemnity (like U.S. Steel) paid the settlement voluntarily, despite the fact that it need not have paid anything. The supreme court explained:

> One party may indemnify another against liability for
> the indemnitor's acts and those of his employees,

agents and subcontractors as well as against liability for the indemnitee's own acts. The agreement will be broadly construed where indemnity is sought for liability based on the indemnitor's negligence but will be strictly construed where the indemnitee is the negligent party. *The court will not allow an indemnitee to be indemnified for his own negligent acts absent a clear and unequivocal statement to that effect in the agreement.*

*Id.* at 452 (citation omitted; emphasis added). Further, the supreme court clarified that "in cases involving parties other than a lessor and lessee, *where the indemnitor is not negligent and the indemnitee is the sole actively negligent cause of the injury[,] this court has held to the strict construction rule.*" *Id.* at 454 (emphasis added).[12]

¶ 24. In the instant case, therefore, where only WEPCO's negligence was alleged, and where the indemnification agreement not only did *not* include "a clear and unequivocal statement" indemnifying WEPCO for its negligent acts, but actually provided "a clear and unequivocal statement" to the contrary, strict construction of the indemnification agreement was required. And that agreement, literally and strictly construed, relieved Time Warner of liability for WEPCO's sole negligence.

¶ 25. But *Barrons* did not stop there. Immediately after clarifying the strict construction standard that would seem to defeat Travelers' argument in this case,

---

[12] The supreme court also stated that even when an indemnity agreement lacks "a clear and unequivocal statement" providing for indemnification for an indemnitee's own negligence, "the court will construe the agreement to provide such indemnity if that is the only reasonable construction." *Barrons*, 89 Wis. 2d at 452–53.

the supreme court went on to say, "However, *when an action is based upon a safe-place[-]statute duty*[,] the indemnitor will be required to indemnify the indemnitee to the extent of the indemnitor's share of the total liability, creating an effect identical to that of contribution." *Id.* at 455 (emphasis added). Further, the supreme court explained, "*because the liability question under the Findorff-U.[]S. Steel indemnification contract was settled rather than tried, United States Steel need only to show potential liability to recover on its indemnity contract* with Reinke & Schomann, Inc." *Id.* (emphasis added).

¶ 26. Moreover, reiterating that "[t]he safe-place duty is nondelegable," *id.* at 458, the supreme court clarified that contractors and subcontractors share responsibility for providing a safe workplace, notwithstanding their indemnity agreements, *id.* at 458–59. Thus, the supreme court emphasized, a general contractor "can only be held liable to an injured workman for an affirmative act of negligence *or for a failure of duty under the Safe Place Act.*" *Id.* at 459 (emphasis added). Specifically rejecting the notion that "the strict construction rule" should be applied "to safe-place liability," *id.*, the court explained that a safe-place claim could require indemnification even when a companion common-law negligence claim would not, *id.* at 457.

¶ 27. Thus, the supreme court seemed to carve out two qualifications to the general rule strictly construing indemnity agreements against the indemnitee when the indemnitee is solely negligent—one, for a safe-place claim; the other, for a settlement that left liability undetermined. Both qualifications could apply here; a safe-place claim was involved, and a settlement occurred with WEPCO denying liability. Therefore, in the instant case, the circuit court's rationale supporting summary

judgment on the negligence claim would not necessarily operate with equal force on the safe-place claim. Still, two important distinctions between *Barrons* and the instant case lead us to conclude that the circuit court's grant of summary judgment on the safe-place claim was correct.

¶ 28. First, in *Barrons*, the supreme court clarified that, in a common-law-negligence cause of action, the general contractor's liability for injury to a subcontractor's employee depends upon the general contractor's commission of an "affirmative act of negligence that increases the risk of injury," but under the safe-place statute, the general contractor has a duty to a subcontractor's employee "*if the [general] contractor has reserved a right of supervision and control over the employee.*" *Id.* at 457 (emphasis added). Thus, in *Barrons*, the supreme court was drawing its distinction between a common-law-negligence claim and a safe-place-statute claim in a case involving the typical relationships among the general contractor and subcontractors where, by virtue of their participation in the construction project, they shared responsibility for providing and monitoring a safe workplace for their employees. The supreme court explained, "From the facts given it can reasonably be inferred that Findorff retained sufficient control over the construction site to require Patnode to correct these violations [regarding the use of splash guards and safety lines] and therefore subject Findorff to potential liability under the safe place cause of action." *Id.* at 458–59. Thus, despite the fact that Reinke & Schomann, the secondary subcontractor, had "expressly agreed to assume responsibility for the negligent acts of its subcontractors and to indemnify both United States Steel and Findorff against liability for such acts," *id.* at 460, Findorff's safe-place liability still was possible.

384

▮

¶ 29. Here, by contrast, Time Warner had not subcontracted any work to WEPCO; it merely had contracted with WEPCO for the use of the WEPCO utility poles. Thus, unlike all the contracting parties in *Barrons*, Time Warner was outside the safe-place-statute loop; it was neither an employer nor an owner in connection with the poles. As *Barrons* explained:

> If these indemnity clauses are to be given any effect at all, where, as here, the general contractor has given the subcontractor, in this case United States Steel, complete responsibility for a phase of the construction, the indemnity clause must be construed to require indemnity where the general contractor is liable only because the subcontractor created a potential liability in a safe-place cause of action.

*Id.* Unlike U.S. Steel in *Barrons*, Time Warner here did not create the "potential liability" for which indemnity was sought.

¶ 30. Second, in *Barrons*, the supreme court, in the section of its decision discussing both common-law negligence and safe-place-statute liability, emphasized that "[t]he Findorff-U.[]S. Steel indemnity agreement does not contain language clearly requiring United States Steel to indemnify Findorff for liability occasioned by Findorff's own negligence." *Id.* at 456. Here, by contrast, the Time Warner/WEPCO indemnity agreement includes a specific *exception* to Time Warner's indemnity obligations, precluding Time Warner's liability for WEPCO's "sole negligence."

*By the Court.*—Judgment and order affirmed.