BARTH, Plaintiff-Appellant, v. DOWNEY COMPANY, INC., a domestic corporation, Defendant-Respondent: SZANIAWSKI and another, co-partners, d/b/a Advance Salvage Company, Third-Party Defendant.

*No. 598 (1974). Argued February 2, 1976.—Decided March 2, 1976.*
(Also reported in 239 N. W. 2d 92.)

For the appellant there were briefs and oral argument by *Stephen R. Miller* of Milwaukee.

For the respondent there were briefs by *Edmund W. Powell, Robert C. Burrell* and *Borgelt, Powell, Peterson & Frauen,* all of Milwaukee, and oral argument by *Edmund W. Powell.*

ROBERT W. HANSEN, J. This is not a claim for workmen's compensation benefits brought by a workman injured on the job against his employer.[1] Such actual or immediate employer here was the subcontractor, Advance Salvage, for whom the plaintiff worked and by whom he was employed. Moreover, in this state, while the Workmen's Compensation Act is to provide an exclusive remedy,[2] actions in tort brought against third parties for on-the-job injuries are permitted.[3] So this action was brought against the general contractor, Downey Company, as an "owner or employer" under the safe-place statute.[4] The initial question to be answered is whether there is here a basis for such claim of liability under such safe-place statute.

## Safe-place statute.

The safe-place statute provides that every employer "shall furnish employment which shall be safe for the employes therein."[5] This duty could not devolve upon the general contractor here for the reason that the plaintiff was not his employee. The statute also provides that every employer and every owner of a place of employment shall maintain such place "as to render the same safe," both as to employees and as to "frequenters."[6] The work site here involved was a temporary "place of employment."[7] While not an employee of the general contractor, the plaintiff here was a "frequenter."[8] An

[1] See: Ch. 102, Workmen's Compensation Act (1967).

[2] Sec. 102.03 (2), Stats.

[3] Sec. 102.29, Stats.

[4] Sec. 101.06, Stats. 1967.

[5] Id.

[6] Id.

[7] See: Padley v. Lodi (1940), 233 Wis. 661, 663, 290 N. W. 136. See also: Peppas v. Milwaukee (1966), 29 Wis. 2d 609, 615, 139 N. W. 2d 579, 141 N. W. 2d 228.

[8] See: Frankovis v. Klug & Smith (1957), 275 Wis. 156, 161, 81 N. W. 2d 495, there holding the plaintiff, an employer of

owner or general contractor can owe a duty under the safe-place statute to a frequenter when a hazardous condition is created, but only if the owner or general contractor has reserved a right of supervision and control.[9] For three reasons, we affirm the trial court holding that no such duty was here owed by the general contractor under the provisions of the safe-place statute. The three reasons, each sufficient, are:

1. *No unsafe condition.* Our court has made clear that the safe-place statute ". . . has reference to an unsafe condition rather than to an act in the process of taking place."[10] This was said in a case where the manner of lowering or dropping the bucket by a crane operator resulted in injury to a "frequenter" of a "place of employment." While here the plaintiff was injured by his own act or operation, the same result must be reached. Plaintiff's climbing into the ceiling-high duct and weakening its supports constituted an *act* that was unsafe rather than a *condition* that was unsafe. His injuries must be related to *acts* of operation as distinguished from

the subcontractor, to be, as to the general contractor, a "frequenter" under the safe-place statute.

[9] *See: Potter v. Kenosha* (1955), 268 Wis. 361, 372, 68 N. W. 2d 4, this court holding, as to an owner and here applicable to the general contractor: "We are constrained to hold that when an owner turns over to an independent contractor the complete control and custody of a safe place, whereon or whereunder the contractor creates a place of employment for the purpose of fulfilling the terms of the contract, the owner reserving no right of supervisor or control of the work excepting that of inspection or to change the plan with reference to the construction to be furnished, if thereafter in the performance of the work under the contract the premises are changed by the contractor and as a result a hazardous condition is created, the owner does not become liable to the contractor's employee injured as a consequence of such hazardous condition while acting in the scope of his employment."

[10] *Deaton v. Unit Crane & Shovel Corp.* (1953), 265 Wis. 349, 352, 61 N. W. 2d 552.

the *condition* of the duct.[11] We follow *Deaton* to hold that the safe-place statute has "no application to such acts of operation."[12] Or, as our court has more recently stated the same rule, the safe-place statute ". . . deals with unsafe conditions and not with negligent acts as such."[13]

2. *Not in control.* There is no duty on the part of a general contractor to superintend the activities of the employee of a subcontractor.[14] Ordinarily, as in the case of an owner hiring an independent contractor to do work on his building, the general contractor reserves no right or control of the work excepting that of inspection or of changing the plan with reference to the construction to be furnished. That alone is not enough to make such owner or such general contractor liable for a frequenter's injury while such frequenter was acting in the scope of

[11] *Id.* at pages 352, 353, this court stating: "The alleged acts of defendant's crane operator as to the manner of lowering or dropping the bucket of the power shovel, and failing to warn plaintiff before so dropping the bucket, relate to acts of operation as distinguished from the condition of the machine."

[12] *Id.* at page 353, this court holding: "The safe-place statute has no application to such acts of operation, and the issue of the crane operator's negligence should have been submitted to the jury on the basis of common-law negligence."

[13] *Gilson v. Drees Brothers* (1963), 19 Wis. 2d 252, 257, 120 N. W. 2d 63, this court holding: "The trial judge noted that there was no claim that there was a structural defect in the equipment used in connection with defendants' building. The court found no physical defects in the auction room where the accident occurred. While the auction ring may have been a place of employment, it does not follow that the defendants violated the safe-place statute. . . . The safe-place statute deals with unsafe conditions and not with negligent acts as such." (Citing *Deaton v. Unit Crane & Shovel Corp., supra,* footnote 10.)

[14] *See: Carlson v. Chicago & N. W. R. Co.* (1925), 185 Wis. 365, 200 N. W. 669, holding no liability where the defendant loaned an ice chute to the employer of the plaintiff in order to perform certain work, and the ice chute was improperly used.

his employment for someone other than such owner or general contractor.[15] Appellant's claim that directions given to the subcontractor's work crew as to where to start work and how much of the ducts to leave attached to the wall constituted a retention of control is without merit. The test our court has stated is whether the owner, or here the general contractor, "stood in the shoes of the [immediate] employer by reason of his retention of control of the premises."[16] Even a retained right to check as to compliance with specifications, and to stop construction progress for lack of compliance with specifications, our court has held, is not an exercise of control over how the actual manner in which the specifications were complied with.[17] No retention or exercise of control over the details of the work of the subcontractor is established by the record in this case.

3. *No duty to furnish.* Appellant seeks to locate a duty on the part of a general contractor to provide proper tools and equipment for the performance of the work a subcontractor had contracted to perform. That puts the shoe on the wrong foot. That duty to furnish safe equipment is on the immediate employer.[18] As this court has held, the responsibility for providing tools and equipment, such as ladders or scaffolds, is on the employee's immediate employer.[19] The plaintiff's conversation with

[15] *See: Lee v. Junkans* (1962), 18 Wis. 2d 56, 61, 117 N. W. 2d 614.

[16] *Id.* at page 61.

[17] *Berger v. Metropolitan Sewerage Comm. of County of Milwaukee* (1973), 56 Wis. 2d 741, 750, 203 N. W. 2d 87, this court holding: "The presence or absence of engineering inspectors, despite their authority to stop construction progress for lack of compliance with the specifications, is not a manifestation of control. These employees merely enforce the contract."

[18] *Lovesee v. Allied Development Corp.* (1969), 45 Wis. 2d 340, 348, 173 N. W. 2d 196. *See also:* IND 35.01 and 35.10, Wis. Adm. Code.

[19] *Id.* at pages 347, 348.

an employee of the general contractor as to borrowing equipment, including a scaffold from the general contractor, created no duty on the part of the Downey Company to provide such tools or equipment. The inquiry was made but no response was given and no shift of the Advance Salvage Company's duty to provide needed scaffolding and equipment occurred. The situation would be different if the general contractor had loaned equipment for use by the subcontractor's employees for then it might have a liability deriving from its having furnished defective or unsafe equipment that resulted in injury.[20]

For the reasons stated, we agree with and affirm the trial court holding that, on this record, ". . . The element of duty imposed by the safe place statute being completely absent under the circumstances of this case, it was error to submit the matter of negligence to the jury on the basis of this standard." That leads to the question of whether the issue of liability should be tried on another basis.

*Common-law negligence.*

The trial court held that the issue of liability, together with a comparison of negligence, "must be retried," finding a jury question presented as to whether the "pressure" that was exerted by an employee of the general contractor to "proceed at a faster rate" constituted a breach of duty by the general contractor under the common-law standard of negligence. Such retrial on the theory of common-law negligence would make this case, in some measure, analogous to the third-party action in which an injured workman sues a supervisory or executive officer of the company by which he was employed. Such action is also based ". . . upon

---

[20] *See: Lovesee v. Allied Development Corp., supra,* footnote 18.

common-law failure to exercise ordinary care toward an employee to whom, under the circumstances, a duty was owed."[21] Liability of a general contractor to the employee of a subcontractor, like the liability of a corporate officer as a coemployee, would have to depend or derive from "affirmative acts" of negligence.[22] This court said of a suit against a corporate officer: "Clearly something extra is needed over and beyond the duty owed the employer."[23] In the claim against a corporate officer or supervisor employee that "something extra" is an affirmative act which increased the risk of injury.[24] In a, third-party action against a general contractor brought by an employee of a subcontractor, there would need to be the same "something extra," an affirmative act of negligence that increased the risk of injury.

In reviewing the record as to whether or not a jury question as to the existence of such "affirmative act of negligence" on the part of the general contractor here existed, the trial court emphasized the "prodding" or "pressuring" of the plaintiff to "increase the tempo of his work." Apparently the trial court saw this constituting the "something extra," beyond the role and status

[21] *Lampada v. State Sand & Gravel Co.* (1973), 58 Wis. 2d 315, 318, 319, 206 N. W. 2d 138.

[22] *Ortman v. Jensen & Johnson, Inc.* (1975), 66 Wis. 2d 508, 514, 225 N. W. 2d 635.

[23] *Kruse v. Schieve* (1973), 61 Wis. 2d 421, 428, 213 N. W. 2d 64. *See also: Garchek v. Norton Co.* (1975), 67 Wis. 2d 125, 129, 226 N. W. 2d 432.

[24] *Kruse v. Schieve, supra,* footnote 23, at page 428, citing and reviewing *Hoeverman v. Feldman* (1936), 220 Wis. 557, 265 N. W. 2d 580, saying of it that ". . . that added element was provided by the company president directing a particular employee to operate a particular machine in a particular manner"; and *Wasley v. Kosmatka* (1971), 50 Wis. 2d 738, 184 N. W. 2d 821, saying of it that ". . . that additional factor was provided by the corporate officer actually driving the truck which caused the fatal injury."

of general contractor, that was sufficient to warrant at least a retrial on the basis of common-law negligence. The question is close. No instruction or advice appears to have been given as to the means by which the subcontractor's rate of progress should be increased. In fact, cutting larger pieces of duct at a single time was the plaintiff's initial response to the general contractor's seeking of accelerated work performance. If our holding were to be based on what is in this record, it is difficult to see here spelled out a case of breach of a common-law duty owed. However, the respondent general contractor, arguing against retrial, points out that, "No evidence was produced by the plaintiff as to the details of the procedures used to remove ductwork other than the piece involved in the accident." This appears to be true as to other facts material on the retrial on a different theory of liability. As to such absence of proof, material on a trial as to common-law negligence but not required for a case based on safe-place statute liability, we see an injustice or unfairness in using this record to determine what would be presented on retrial. Where there is a confession of court error in the submitting of this case to the jury on a safe-place statute basis, we see the error as reaching back to the beginning of this lawsuit. For the complaint itself, as we read it, as well as the presentation of proof during the trial, were addressed solely to liability under the safe-place statute. With error conceded, we hold a new trial from the beginning on all issues as here indicated is proper. This includes the right of the plaintiff to file an amended complaint on the different theory of liability and the right of the defendant to answer or otherwise plead to such amended complaint with the retrial or new trial to be on all issues, including damages. While we affirm the holding of the trial court that there be a new trial, we modify that order to provide that the new trial be as to all issues, including damages. This includes the right of the plaintiff to file an amended complaint setting forth a claim

of liability under the common-law standard and includes the right of the defendant to answer or otherwise respond to an amended complaint, if such be filed.

*By the Court.*—That portion of the order setting aside the jury verdict, finding negligence under the safe-place statute standard, is affirmed. That portion of the order granting a new trial is affirmed, but modified to include all issues and the right of the plaintiff to file and defendant to answer or otherwise respond to an amended complaint, if one be filed.