Robert J. WAGNER, Plaintiff-Respondent,

v.

CONTINENTAL CASUALTY COMPANY, a division of CNA Insurance Companies, Klein Land Company, Harold H. Klein and Randy Klein, Defendants-Appellants,

UNITED STATES FIDELITY & GUARANTY COMPANY, Ben'O Salvage & Supply Company, Incorporated and Klein Industrial Company, Incorporated, Defendants.

Supreme Court

*No. 86–0791. Argued September 8, 1987.—Decided April 14, 1988.*

(Also reported in 421 N.W.2d 835.)

For the defendants-appellants there were brief in the court of appeals by *William W. Ehrke, Dorothy H. Dey* and *Prosser, Wiedabach & Quale, S.C.,* Milwaukee, and oral argument by *William W. Ehrke.*

For the plaintiff-respondent there was a brief in the court of appeals and oral argument by *Charles W. Oppitz,* and *Charles W. Oppitz, S.C.,* Milwaukee.

STEINMETZ, J.   The circuit court awarded Robert J. Wagner, the plaintiff, damages for injuries sustained when he fell through the roof of a building owned by Harold H. Klein and Randy Klein, the defendants. We reverse the judgment.

This case comes to us on certification by the court of appeals pursuant to sec. 808.05(2), Stats. We granted certification to determine under what circumstances an employee who has received worker's compensation benefits from his employer, an independent contractor, may maintain a tort action against the independent contractor's employer.

We conclude that an employee of an independent contractor is precluded from receiving worker's compensation benefits from the independent contractor

and also maintaining a tort action against the person who employs the independent contractor, the principal employer or general contractor, unless the principal employer is affirmatively negligent with respect to the employee.

The material facts in this case are undisputed. The defendants, Harold H. and Randy Klein, hired Vince Kobida (Kobida), an independent contractor, to demolish a dilapidated factory on their land. Defendants are partners in the Klein Land Company, which is a holding company involved in real estate development. The defendants also are shareholders in Klein Industrial Company, Incorporated, a salvage company specializing in scrap iron.

Once the defendants decided to demolish the building, Randy Klein searched the yellow pages for a contractor to perform the work. Kobida heard the defendants were taking bids and so he submitted one. Randy Klein received three oral bids and awarded the contract to Kobida, the lowest bidder. The defendants did not supervise the demolition nor exercise any control over the activities.

The one-page contract stated simply that Kobida would abide by all government regulations, would hold the defendants harmless for injuries and damages arising from the project, and would provide the necessary insurance, including worker's compensation.

Kobida started in the wrecking business in 1936 but had not demolished a building in more than 25 years. For the past 20 years, he acted as an unpaid consultant to various wrecking firms. When Kobida was hired, he had no equipment or employees with which to perform the demolition. He did, however,

acquire equipment and hire personnel after the job was undertaken.

Randy Klein did not investigate Kobida's qualifications. He did not inquire whether Kobida was a member of the National Association of Demolition Contractors, an organization of persons involved in demolition which compiles a safety manual for demolition and provides safety information to those in the field. He did not inquire whether Kobida had the proper equipment, nor did he call any references.

Among the several workers hired by Kobida to undertake the demolition project was the plaintiff, Robert J. Wagner, a 20–year old with no experience in demolition. At the time of the injury, Wagner and a co-worker were working on the roof of the factory at least 40 feet above the ground. The roof was riddled with holes. As the plaintiff and his co-worker rolled a heavy steel tripod off the roof, the plaintiff caught his glove on the tripod. Wagner was thrown into the air and fell through the roof to the ground sustaining permanent injury to his left foot.

The plaintiff received worker's compensation benefits from Kobida, his employer. Wagner then filed this tort action, seeking additional recovery from the defendants who employed Kobida under the theories that the demolition work was nondelegable because it was inherently dangerous and that defendants negligently hired the independent contractor.

At trial, the plaintiff's expert witness testified that without safety precautions the conditions on the roof were inherently dangerous. The expert stated that a competent contractor would have used a crane to remove the roof. He testified that a person who hires an independent contractor to perform demolition work should check the contractor's background

and make sure the contractor has the proper equipment.

The trial judge, Honorable John F. Foley, denied defendants' motions to dismiss. The court concluded that the determination of whether an activity is "inherently dangerous" is a question of fact. Over defendants' objections, the court submitted the questions of inherent danger and negligent hiring to the jury for resolution.

The jury, by special verdict, concluded that the demolition work constituted an inherently dangerous activity and that the Kleins had negligently hired the independent contractor, Kobida. Additionally, the jury attributed 24 percent negligence to the Kleins, 71 percent to Kobida and 5 percent to Wagner and awarded Wagner $481,750.58 in damages. The Kleins were held liable for 95 percent of the damages.

On appeal, the plaintiff asserts that the judgment should be affirmed under either of two theories: (1) the defendants were negligent in hiring the independent contractor and should be liable for damages caused by their negligence; or (2) the defendants employed the independent contractor to perform work that was inherently dangerous and are therefore liable for injuries caused by negligent performance of such work.

The defendants contend that their liability to an employee of an independent contractor injured during employment on their property must be predicated on their affirmative act of negligence toward the employee. The defendants argue that because no such affirmative negligent act on their part has been alleged or proved, they are not liable to the plaintiff.

The issues in this case, *i.e.,* the scope of duty owed by an owner or general contractor to a subcontractor's

employees, present questions of law. *See Johnson v. Misericordia Community Hosp.*, 99 Wis. 2d 708, 723, 301 N.W.2d 156 (1981). Accordingly, this court undertakes an independent review of the issues, without giving deference to the trial court. *Lambert v. Wrensch*, 135 Wis. 2d 105, 115, 399 N.W.2d 369 (1987).

Section 102.03(2), Stats.,[1] provides that the employee's right to recover worker's compensation benefits shall be the employee's exclusive remedy against the employer. This section does not, however, preclude an employee from suing a person who is not his or her employer. Section 102.29(1)[2] provides that an employee's claim for worker's compensation against the employer shall not affect the employee's right to bring an action in tort against "any other party." The defendants in this case are not the plaintiff's employer.

---

[1]Sec. 102.03(2), Stats., provides in pertinent part:

"**102.03 Conditions of liability.** ...
"(2) Where such conditions exist the right to the recovery of compensation under this chapter shall be the exclusive remedy against the employer, any other employe of the same employer and worker's compensation insurance carrier. ..."

[2]Sec. 102.29(1), Stats., provides in part as follows:

"**102.29 Third party liability.** (1) The making of a claim for compensation against an employer or compensation insurer for the injury or death of an employe shall not affect the right of the employe, the employe's personal representative, or other person entitled to bring action, to make claim or maintain an action in tort against any other party for such injury or death, hereinafter referred to as a 3rd party; nor shall the making of a claim by any such person against a 3rd party for damages by reason of an injury to which ss. 102.03 to 102.64 are applicable, or the adjustment of any such claim, affect the right of the injured employe or the employe's dependents to recover compensation. ..."

We recognize that sec. 102.06, Stats.,[3] provides that where there is a failure of the direct employer to carry worker's compensation, the owner/general contractor may be liable for paying worker's compensation to the employee. While sec. 102.06 raises the question of whether a principal employer who is secondarily liable for payment of worker's compensation benefits to an injured employee of the independent contractor acquires the employer's statutory immunity from tort liability, it should be noted that the parties in this case have not briefed this issue. Apparently they assume that an independent contractor's employee is not precluded from bringing an action in tort against a general contractor who has not provided worker's compensation benefits. *See Cermak v. Milwaukee Air Power Pump Co.*, 192 Wis. 44, 211 N.W. 354 (1927); *Culbertson v. Kieckhefer Container Co.*, 197 Wis. 349, 222 N.W. 249 (1928).

In *Cermak*, this court declared that an injured employee retains the right to maintain a tort action seeking damages from the principal employer for

---

[3]Sec. 102.06, Stats., provides in part as follows:

"**102.06 Joint liability of employer and contractor; loaned employes.** An employer shall be liable for compensation to an employe of a contractor or subcontractor under the employer who is not subject to this chapter, or who has not complied with the conditions of s. 102.28(2) in any case where such employer would have been liable for compensation if such employe had been working directly for the employer, including also work in the erection, alteration, repair or demolition of improvements or of fixtures upon premises of such employer which are used or to be used in the operations of such employer. The contractor or subcontractor (if subject to this chapter) shall also be liable for such compensation, but the employe shall not recover compensation for the same injury from more than one party. ..."

affirmative acts of negligence, even if the principal employer is the insurer of worker's compensation benefits under sec. 102.06, Stats. A year after *Cermak* was decided this court held in *Culbertson* that an injured employee could bring a common law tort action against a principal employer subject to sec. 102.06, irrespective of whether the principal employer actually paid worker's compensation benefits. Under *Culbertson,* any benefits paid under sec. 102.06 were merely offset against the amount awarded in the tort action. Under *Cermak* and *Culbertson,* the principal employer was considered an "insurer" of compensation benefits and not an "employer" under the act who would enjoy the statutory immunity from tort liability, even when worker's compensation benefits were paid.

While we do not necessarily continue to embrace all of the principles espoused in *Cermak* and *Culbertson,* we do not need to decide the issues surrounding the existence and scope of statutory immunity from tort liability of a general contractor who *has* provided worker's compensation pursuant to sec. 102.06, Stats. In the present case, Kobida, the independent contractor, in fact provided worker's compensation benefits to the plaintiff; Klein, the general contractor, was not required to provide, and did not provide, any worker's compensation benefits to Robert Wagner. Accordingly, sec. 102.06, and any statutory immunity arguably inuring to the general contractor under sec. 102.03(2), are not implicated in this case.

Having determined that the defendants do not enjoy statutory immunity from tort liability under the worker's compensation laws, we examine the scope of

387

defendants' potential liability in tort under common law principles.

Wisconsin follows the general rule that a principal employer is not liable to others for the torts of independent contractors. *Lofy v. Joint School Dist. No. 2,* 42 Wis. 2d 253, 263, 166 N.W.2d 809 (1969). Plaintiff asserts that this court has previously recognized two exceptions to this general rule to hold a principal employer responsible to an independent contractor's employee. First, a principal employer may be liable to the independent contractor's employee for injuries caused by the principal employer's affirmative act of negligence. *Barth v. Downey Co., Inc.,* 71 Wis. 2d 775, 239 N.W.2d 92 (1976). Second, a principal employer may be held vicariously liable for the negligence of an independent contractor when the contractor's employee is injured while performing inherently dangerous activities. *Snider v. Northern States Power Co.,* 81 Wis. 2d 224, 260 N.W.2d 260 (1977).

Defendants agree that under *Barth,* an employee of an independent contractor may recover from a principal employer for affirmative acts of negligence. However, they claim that any negligence involved in hiring Kobida constituted an act of omission insufficient to rise to the level of an affirmative act.

In *Barth,* the plaintiff was employed by an independent contractor who had contracted with a general contractor to remove heating and ventilation ducts from the Milwaukee Arena. The plaintiff was injured when a piece of equipment fell to the ground. He then sued the general contractor for his injuries. In discussing the issue of general contractor's negligence as it pertained to the claims of the employee of

the independent contractor, the court stated the case was an action based:

> "'[U]pon common-law failure to exercise ordinary care toward an employee to whom, under the circumstances, a duty was owed.' Liability of a general contractor to the employee of a subcontractor, like the liability of a corporate officer as a coemployee, would have to depend or derive from 'affirmative acts' of negligence. This court said of a suit against a corporate officer: 'Clearly something extra is needed over and beyond the duty owed the employer.' In the claim against a corporate officer or supervisor employee that 'something extra' is *an affirmative act which increased the risk of injury.* In a third-party action against a general contractor brought by an employee of a subcontractor, there would need to be the same 'something extra,' an affirmative act of negligence that increased the risk of injury." *Id.* at 782–83. (Emphasis added.)

In *Snider,* this court affirmed the principle enunciated in *Barth* stating that a third-party action brought by a subcontractor's employee against a general contractor would have to be predicated upon affirmative acts of negligence that increased the risk of injury. *Snider,* 81 Wis. 2d at 238–39.

In the present case, the jury found that the Kleins negligently selected the independent contractor to perform the demolition work. The question then becomes whether this negligent hiring was an act of *commission* constituting an affirmative act of negligence or whether it was an act of *omission* which does not rise to the level of an affirmative act.

The distinction between acts or omissions—between "misfeasance" and "nonfeasance," while not always clear, has long been examined in the common

law of negligence in order to determine the existence of a duty. Prosser & Keeton, The Law of Torts, sec. 56, p. 373 (1984).

> "The reason for the distinction may be said to lie in the fact that by 'misfeasance' the defendant has created a new risk of harm to the plaintiff, while by 'nonfeasance' he has at least made his situation no worse, and has merely failed to benefit him by interfering in his affairs." *Id.*

*Snider,* 81 Wis. 2d at 239, recognized the difference between negligence which was that of an act of omission not commission while also reaffirming *Barth*'s requirement of affirmative negligence.

In the case at bar, the defendants failed to check the credentials of the independent contractor or make other inquiries. This failure cannot be seen as active misconduct constituting an affirmative act; rather, it was a "passive inaction or a failure to take steps to protect" the plaintiff from harm. *Id.* Accordingly, we hold as a matter of law that the plaintiff could not recover from defendants on this basis; negligent hiring does not by itself constitute an affirmative act of negligence upon which the liability of a principal employer to a contractor's employee can be based. Stated another way, a principal employer or general contractor owes no duty to an independent contractor's employee to carefully select the independent contractor.

Turning to the second claim, we examine the liability of the principal employer to an independent contractor's employee for injuries sustained while performing inherently dangerous activities.

Plaintiff relies heavily on various sections of the Restatement (Second) of Torts to support his claim that an employee of an independent contractor can recover from a principal employer for injuries sustained while performing inherently dangerous work. Sections 413 and 416 (dealing with work creating "a peculiar risk of physical harm to others" absent special precautions), and sec. 427 (dealing with inherently dangerous work) impose vicarious liability on a principal employer for the negligence of the independent contractor. Section 413 makes the principal employer liable where he or she fails to take special precautions against the danger by specifying for them in the contract or otherwise exercising reasonable care. Sections 416 and 427 impute the independent contractor's negligence to the principal employer irrespective of whether the employer is himself or herself at fault on the basis that the dangerous activities involved give rise to a nondelegable duty. "They arise in situations in which, for reasons of policy, the employer is not permitted to shift the responsibility for the proper conduct of the work to the contractor." Restatement (Second) Torts, Introductory Note to secs. 416–429.

Plaintiff argues that these sections were adopted in Wisconsin with respect to employees of independent contractors in *Snider v. Northern States Power Co.,* 81 Wis. 2d 224. In *Snider,* the plaintiff was an employee of an independent contractor engaged in electrical construction work in a nuclear generating plant. Snider sued the plant owner, the principal employer, after sustaining injuries from a fall of 90 inches while installing a sheet metal cabinet. Snider claimed, *inter alia,* that the work of an electrician in

the construction of a nuclear power plant was "extra-hazardous." *Id.* at 235.

This court stated in *Snider* that "[a]ssuming that the work in which Snider was engaged was extra-hazardous, a nondelegable duty was imposed upon Northern States Power." *Id.* at 233. The court found that as a matter of law "the risk to which Snider was exposed was not related to the hazards that would be experienced in working with high voltage or working at unusual heights. The hazard here was one which could be encountered typically in the work of any construction worker." *Id.* at 235.

*Snider* cited in dicta secs. 413, 416 and 427 of the Restatement and discussed the peculiar risks associ-ated with inherently dangerous or extrahazardous activities. While the dicta in *Snider* did not specifical-ly differentiate between activities that are "inherent-ly dangerous" and those that are "extrahazardous," this distinction was not necessary in that case be-cause, as the court pointed out, the claimed negligence of the principal employer was not related to either inherently dangerous or extrahazardous work. How-ever, we clarify the use of those terms in this case. We do not regard an activity which is inherently danger-ous because of the absence of special precautions to be synonymous with an activity that is extrahazardous. A person engaged in an activity of the first type, *i.e.,* one that is inherently dangerous without special precautions, can take steps to minimize the risk of injury. Examples include general construction, demo-lition, and excavation.

By contrast, an activity that is said to be extraha-zardous, or abnormally dangerous, is one in which the risk of harm remains unreasonably high no matter how carefully it is undertaken. Examples would

392

include transporting nuclear waste or working with toxic gases. Although the *Snider* briefs reveal that the parties discussed inherently dangerous circumstances, the plaintiff in *Snider* was in essence making a claim of the second type, *i.e.,* that the work was so extrahazardous that responsibility could not be delegated to an independent contractor.

While *Snider* may lend support to the claim of an independent contractor's employee engaged in extrahazardous or abnormally dangerous activities, it cannot be seen as supporting the claim in the present case. It is not exactly clear on what precise basis Wagner claims the work he performed was inherently dangerous; however, he has not advanced the argument that the work involved activity so intrinsically dangerous that the risks could not have been minimized.

Instead, Wagner asks us to read *Snider* as holding that an employee of an independent contractor states a cause of action against the principal employer for injuries sustained while engaged in activities which are inherently dangerous because of the absence of special precautions. That is, plaintiff asks us to apply secs. 413, 416 and 427 of the Restatement to employees of independent contractors. This we decline to do.

The defendants are, on the other hand, advocating that we overrule *Snider* insofar as that case may be interpreted as recognizing that an employee of an independent contractor engaged in inherently dangerous work may maintain a common law tort action against the principal employer. The defendants urge that this court hold that employees of an independent contractor should be barred from maintaining a tort action against the principal employer even when the work is inherently dangerous. They argue that the

principal employer should be liable under secs. 413, 416 and 427 of the Restatement for injuries incurred during inherently dangerous work only to non-employees.

The drafters of secs. 413, 416 and 427 of the Restatement (Second) of Torts purposely avoided deciding whether a principal employer is liable in tort for the injuries to an employee of an independent contractor as well as to third parties injured by the independent contractor negligently performing inherently dangerous work. All of the illustrations in secs. 413, 416 and 427 of the Restatement relate to third parties. None involves an employee. Thus, the defendants reason that the drafters of the Restatement did not intend to permit employees of the independent contractor to recover from the principal employer for injuries the employee sustained while performing inherently dangerous work.

The history of secs. 413, 416 and 427 casts some light on the issue of whether employees of independent contractors are covered under those sections. In an early tentative draft (Tentative Draft No. 7, 1962), a special note to Chapter 15 stated that a principal employer's liability to "others" injured because an independent contractor was negligent in performing inherently dangerous work was not generally viewed as extending to employees of the independent contractor because the employees receive worker's compensation and the principal employer indirectly pays for the worker's compensation in the contract price. The note states in pertinent part:

> "[T]he workman's recovery is now, with relatively few exceptions, regulated by workmen's compensation acts, the theory of which is that the insurance

out of which the compensation is to be paid is to be carried by the workman's own employer, and of course premiums are to be calculated on that basis. While the workmen's compensation acts not infrequently provide for third-party liability, it has not been regarded as necessary to impose such liability upon one who hires the contractor, since it is to be expected that the cost of the workmen's compensation insurance will be included by the contractor in his contract price for the work, and so will in any case ultimately be borne by the defendant who hires him." A.L.I. Tentative Draft No. 7, 1963, pp. 17–18.

The special note is not, however, included in the final version of the Restatement. Indeed, there is no reference in the Restatement to employees. Courts have disagreed regarding the significance to be attached to the drafters' omission of the note. *Compare Eustler v. United States,* 376 F.2d 634, 636 (10th Cir. 1967) (citing the note as "persuasive authority" of the drafters' intent to limit the principal employer's liability to third persons only) *with Lindler v. District of Columbia,* 502 F.2d 495, 499 (D.C. Cir. 1974) *and Sloan v. Atlantic Richfield Co.,* 552 P.2d 157, 160 (Alaska 1976) (noting that the drafters' decision not to include this note in their final draft might well indicate that the drafters disagreed about the ability of employees to recover in tort).

According to the Proceedings of the American Law Institute, the special note was apparently omitted to avoid making any statement—one way or the other—about the principal employer's liability to employees of independent contractors. Dean Prosser, the reporter of the Restatement, explained to the members of the Institute that the issue of the princi-

pal employer's liability is so closely tied to each state's worker's compensation act and rules on third party liability that it appeared undesirable, if not impossible, to say anything at all in the Restatement about the extent of the principal employer's liability to employees of independent contractors. Thus, the drafters apparently took a "strictly neutral position" on the issue of the principal employer's liability to independent contractor's employees. Discussion of Restatement (Second) of Torts, 39 A.L.I Proceedings 244–49 (1962).

Courts across the country have disagreed about whether principal employers should be liable to injured employees of independent contractors negligently performing inherently dangerous work. Several courts have allowed an employee to maintain tort actions against a principal employer for injuries the employee sustained while performing inherently dangerous work. *See, e.g., La Count v. Hensel Phelps Const. Co.,* 79 Cal. App. 3d 754, 763, 145 Cal. Rptr. 244 (1978) (summarizing California cases); *Lindler v. District of Columbia,* 502 F.2d 495, 499; *Giarratano v. Weitz Co.,* 259 Iowa 1292, 147 N.W.2d 824 (1967). These courts acknowledge that a principal employer is not ordinarily liable to the employee of the independent contractor performing inherently dangerous work for the negligence of the independent contractor. They recognize that the principal employer has relinquished control to the independent contractor, and that the independent contractor is in the best position to weigh the costs and benefits of various precautions against the costs and probability of an injury.

These courts conclude, however, that where the principal employer contracts out a job which is inherently dangerous, there is special reason to place

some responsibility for safety precautions on the principal employer. The principal employer is likely to know that the work is inherently dangerous, and imposing liability on the principal employer is justified as a means of encouraging the principal employer to take steps to prevent injury. Thus, these courts have concluded that public policy demands that tort liability be imposed on a principal employer for injuries to the employees of independent contractors engaged in inherently dangerous work.

Other courts, distinguishing employees of independent contractors from other persons, have held that the principal employer is not liable in a tort action for personal injuries sustained by an employee of an independent contractor performing inherently dangerous work. The decisions declining to hold the principal employer liable in tort to an injured employee employ one of four reasons.

One reason is that the principal employer should be subject to the same liability when the work is performed by employees of an independent contractor as when the work is performed by the principal employer's own employees. If the principal employer uses his own employees, he is subject to worker's compensation payments, not tort liability. If the principal employer incurs tort liability when he hires an independent contractor, the principal employer would, for reasons of cost, prefer to use his own employees, who may be inexperienced, rather than employ an independent contractor skilled in the task. Thus, several courts conclude that to impose tort liability on the principal employer would have unfavorable consequences to the principal employer, the independent contractor, the employees and the public. These courts therefore immunize the principal em-

ployer from tort liability. *See e.g., King v. Shelby Rural Electric Cooperative Corp.,* 502 S.W.2d 659, 663 (Ky. Ct. App. 1973); *Cochran v. International Harvester Co.,* 408 F. Supp. 598, 603 (W.D. Ky. 1975); *Tauscher v. Puget Sound Power & Light Co.,* 96 Wash. 2d 274, 635 P.2d 426, 431 (1981).

A second reason some courts offer for not imposing liability on the principal employer is that injured employees of an independent contractor do not require compensation through the tort system because they receive compensation for their injuries through worker's compensation benefits. A primary purpose of imposing tort liability is to assure compensation to an injured person. *See, e.g., Rowley v. City of Baltimore,* 305 Md. 456, 505 A.2d 494, 499 (1986). A third party who is injured may be assured compensation only if he or she is able to sue both the independent contractor and the principal employer. Because the employee of the independent contractor is guaranteed recovery through worker's compensation, these courts conclude that permitting an employee to recover in a tort action and to receive worker's compensation results in an unjustifiable windfall. *See generally* Note, *Liability to Employees of Independent Contractors Engaged in Inherently Dangerous Work—A Workable Worker's Compensation Proposal,* 48 Ford. L. Rev. 1165, 1181–82 (1980).

A third reason given for not imposing tort liability on the principal employer is that employees should bear part of the risk of injury. Employees possess some knowledge regarding the work; they agree to perform the work and may to some extent be able to protect themselves against any danger. In contrast, third parties should not bear the risk of injury; their proximity to the work-related danger is coincidental;

they are probably unaware of the danger; and they are unable to protect themselves. *Jackson v. Petit Jean Elec. Co-op,* 268 Ark. 1076, 599 S.W.2d 402, 407 (Ark. App.), *aff'd.,* 270 Ark. 506, 606 S.W.2d 66 (1980).

A fourth reason some courts give for not imposing tort liability on a principal employer is that the principal employer has already indirectly compensated the employee for the injuries. According to these courts, the cost of worker's compensation is built into the cost of the contract. These courts recognize that the underlying purpose for imposing tort liability on a principal employer for the torts of an independent contractor engaged in inherently dangerous work is to insure that the principal employer does not escape liability. A principal employer who can escape tort liability is less apt to use due care to prevent harm. Furthermore, if a principal employer escapes liability, no financially responsible person may be available to compensate the injured party.

The courts which immunize principal employers from tort liability on this fourth ground are persuaded that principal employers do not actually escape liability when employees are precluded from maintaining tort actions. They assert that the principal employer has already assumed financial responsibility for injuries to the employees, because the contract price between the principal employer and the independent contractor includes a payment for worker's compensation coverage. The employee has a remedy for the injury—worker's compensation—for which the principal employer has indirectly paid. Because the principal employer indirectly pays for worker's compensation, the principal employer has an incentive to assure that the independent contractor takes safety precautions and that the injured party is compensated.

This reasoning was employed by the Seventh Circuit Court of Appeals in *Anderson v. Marathon Petroleum Co.,* 801 F.2d 936, 941 (7th Cir. 1986), a case cited by the court of appeals in its certification memorandum. In *Anderson,* the defendant, Marathon Petroleum Co., hired an independent contractor to sandblast the inside of Marathon Petroleum's storage tanks. Anderson, an employee of the independent contractor, died of silicosis. The representative of the deceased employee presented evidence that sandblasting in a confined space produces silicon dust, which, if inhaled over a long period of time, causes silicosis and that the independent contractor did not take adequate precautions against the silicon dust. Further evidence was presented to show that Marathon Petroleum's supervisory personnel did nothing to encourage the independent contractor to protect his employees better.

The *Anderson* court reasoned that the injured employee, unlike the injured non-employee, is compensated for the risks of employment by a combination of wages, benefits and entitlement to worker's compensation. The court further reasoned that the principal employer pays for the employee's package of wages, benefits or entitlements indirectly through the contract price which includes the labor costs. According to the court, the principal employer does not escape liability for injury to the employee; the principal employer pays for any injury through the contract price; and the principal employer has an incentive to provide a safe environment to reduce its contract costs and its contingent liability for worker's compensation.

We are persuaded by the policy considerations advanced in these cases and today join the majority of

jurisdictions that refuse to hold a principal employer vicariously liable to the independent contractor's employee for the torts of the contractor while performing inherently dangerous work. We are convinced that the vicarious liability exception cannot apply to employees of independent contractors involved in work which is inherently dangerous without special precautions. Any other holding would circumvent the bedrock principles of Wisconsin worker's compensation law.

Under our worker's compensation scheme, the guaranteed payment without regard to fault of *either* the employee *or* the employer (in this type of case, the independent contractor) of a certain, albeit lesser sum of money justifies drawing narrow exceptions to the general nonliability rule protecting principal employers. We decline to expand this exception on a vicarious liability theory where the work involved activities characterized as inherently dangerous because special precautions were not taken. Consistent with our prior holdings, something more than omissions or vicarious liability on this basis is necessary to support a claim against a principal employer.

Our holding in this case is not meant to affect in any way the rights of third parties to the employment situation against a principal employer. Nor do we hold that under no circumstances may a principal employer be held vicariously liable to the employee of an independent contractor where the work is classified as abnormally dangerous or extrahazardous, rather than inherently dangerous absent special precautions, as here.

Plaintiff does not argue that demolition is extrahazardous or abnormally dangerous. Although it is not exactly clear for what precise reasons plaintiff

claimed that the work was inherently dangerous, it appears Wagner argued that improper equipment was used and special precautions were not taken.

■

In any event, the question of whether an activity is extrahazardous should not have been submitted to the jury in the first instance. We recognize that standard jury instructions exist on this issue and that trial courts in prior cases have treated the question as one of fact. *See, e.g., Mueller v. Luther,* 31 Wis. 2d 220, 142 N.W.2d 848 (1966). However, as this court stated in *Snider,* 81 Wis. 2d at 233, the issue of whether an activity is extrahazardous presents a question of law for the court to decide. We hold as a matter of law that the activities in the present case were not abnormally dangerous or extrahazardous.

■

We also find as a matter of law that the owners/employers, Kleins, committed no affirmative negligence increasing the risk of injury to the plaintiff; there was no affirmative negligence in hiring the independent contractor, the plaintiff's employer. We hold no tort liability has been established against the defendants. Because we hold as a matter of law that defendants were not liable in tort to Wagner, we do not reach other issues raised by the plaintiff regarding the jury instructions and verdict.

*By the Court.*—The judgment of the circuit court for Milwaukee county is reversed.

SHIRLEY S. ABRAHAMSON, J. (*dissenting*). I dissent because I conclude that the decision in this case contravenes our prior case law and the policies underlying tort law and worker's compensation law. I

402

would affirm the jury's verdict and the judgment of the circuit court.[1]

This case presents a narrow issue: whether principal employers who negligently hire an incompetent independent contractor to perform inherently dangerous work are liable for injury to an employee of an independent contractor caused by their negligent hiring. The majority's answer is no.

Precedent supports the conclusion that the principal employers may be liable in tort for injuries sustained by the employee of an independent contractor performing inherently dangerous work. In *Snider v. Northern States Power Co.,* 81 Wis. 2d 224, 260 N.W.2d 260 (1977), this court recognized that a principal employer is liable in tort to an employee of an independent contractor who sustains injuries because the independent contractor negligently performed inherently dangerous work.[2] *Snider* was a vicarious liability case. If principal employers are vicariously liable to an injured employee for the negligence of the independent contractor, it follows that principal employers are liable to an injured employee for their own

---

[1]The jury found that the wrecking work was inherently dangerous, that the independent contractor was negligent in doing the wrecking (causing the plaintiff's injury), that the principal employers (the defendants) failed to use due care in employing the independent contractor and that the principal employers' negligence was a cause of the plaintiff's injury.

[2]The majority apparently considers this aspect of the *Snider* opinion as dicta. Op. at 392. In *State v. Kruse,* 101 Wis. 2d 387, 392, 305 N.W.2d 85 (1981), quoting *Chase v. American Carthage,* 176 Wis. 235, 238, 186 N.W. 598 (1922), the court said that when "'a court of last resort intentionally takes up, discusses, and decides a question germane to, though not necessarily decisive of, the controversy, such decision is not a *dictum* but is a judicial act of the court which it will thereafter recognize as a binding decision.'"

negligence. The court today overrules *Snider* by reinterpreting it.[3]

The court's conclusion that the principal employers in this case are not liable to the injured employee rests on decisions in other jurisdictions holding that principal employers are not *vicariously* liable to employees of an independent contractor for the negligence of the independent contractor. Reliance on these vicarious liability decisions is misplaced.

First, the question in this case is whether principal employers should be liable in tort for their own negligence, not whether they should be vicariously liable to injured employees of an independent contractor for the independent contractor's negligence. Thus the vicarious liability cases exonerating principal employers from liability are inapposite.

Second, the vicarious liability cases rest on the premise that the principal employers used due care in selecting the independent contractor who negligently performed the inherently dangerous work. In *Anderson v. Marathon Petroleum Co.*, 801 F.2d 936, 941–942 (7th Cir. 1986), a vicarious liability case upon which the majority relies (at op. 400–401), the federal court of appeals expressly stated that it was not addressing a case in which the principal employer negligently

_____

[3]The majority interprets the parties as "in essence" making a claim that the employer was engaged in abnormally dangerous activity. Op. at 392. The parties' briefs contradict this interpretation of the parties' position. The parties, like the *Snider* court, referred only to Restatement sections 416 and 427 which concern inherently dangerous activities. Had the parties intended to address the issue of abnormally dangerous activity, they would have referred to sec. 427A of the Restatement of Torts (Second), which deals with the principal employer's liability for abnormally dangerous activity. They did not.

hired the independent contractor. The implications of *Anderson* and other vicarious liability decisions is that different considerations come into play when principal employers fail to use due care in selecting the independent contractor to do inherently dangerous work.[4] In this case, unlike the vicarious liability cases, the principal employers did not use due care.

Third, the courts exonerating principal employers from vicarious liability reason that tort law should not discourage principal employers from employing skilled independent contractors to do inherently dangerous work. See op. at 397–398.[5] Courts have concluded that immunizing principal employers from vicarious liability to injured employees of an independent contractor for the negligence of the independent contractor would allow principal employers to decide

---

[4]Cf. *Hixon v. Sherwin-Williams Co,* 671 F.2d 1005, 1010 (7th Cir. 1982) (subcontractor is liable to homeowner's insurer for negligently selecting an independent contractor if the negligence causes the injury); *Nelson v. United States,* 639 F.2d 469, 476 (9th Cir. 1980) (owner not liable to employee for failing to insure that safety precautions were taken because the owner hired "a contractor particularly skilled in the specific risks which make the project unusually dangerous").

[5]In *King v. Shelby Rural Electric,* 502 S.W.2d 659, 663 (Ky. Ct. App. 1974), cited by the majority at Op. at 397–398, the court stated, "The imposition of additional tort liability upon the employer because of the selection of an independent contractor would have a tendency to discourage the practice of selecting skilled independent contractors ..." In *Tauscher v. Puget Sound Power and Light Co.,* 635 P.2d 426, 431 (Wash. 1981), cited by the majority at Op. at 398, the court wrote that to hold a principal employer vicariously liable for the negligence of an independent contractor would "discourage owners from hiring experienced independent contractors, who specialize in hazardous work." Accord *Rowley v. City of Baltimore* 505 A.2d 494 (Md.1986)(quoting extensively from both *King supra* and *Tauscher supra).*

whether to use their own employees or to hire an independent contractor for inherently dangerous work on the merits of the decision without regard to concerns about tort liability to an injured employee.

If the goal is to encourage principal employers to use a skilled independent contractor to do inherently dangerous work, then principal employers should not enjoy tort immunity when, as in this case, they are negligent in hiring the independent contractor to do inherently dangerous work. When the work is inherently dangerous, public safety requires at a minimum that principal employers be held liable for injury caused by their negligence in hiring the independent contractor.

Fourth, in the vicarious liability cases, the courts view principal employers as indirect employers of the injured employee of the independent contractor because the principal employers indirectly pay for worker's compensation.

This characterization of principal employers as indirect employers is contrary to Wisconsin law. For the past sixty years, this court has said that principal employers may be insurers under the worker's compensation law but they are not employers of the employees of the independent contractors. See sec. 102.06, Stats. 1985–86; *Cermak v. Milwaukee Air Power Pump Co.,* 192 Wis. 44, 49–50, 211 N.W. 354 (1927); *Culbertson v. Kiefhefer Container Co.,* 197 Wis. 349, 351–52, 222 N.W. 249 (1928). The majority opinion disturbs sixty years of settled law by cryptically declaring that "we do not necessarily continue to embrace all of the principles espoused in *Cermak* and *Culbertson."* Op. at 387.

Moreover, the worker's compensation law expressly provides that it does not affect the right of an

employee to bring action in tort against a tortfeasor who is not an employer (referred to in the law as a third party). Sec. 102.29(1), Stats., 1985–86. Permitting a cause of action against a third party ensures that the ultimate loss falls on the wrongdoer. When principal employers are negligent, rather than just vicariously liable for the negligence of the independent contractor, they are an ultimate wrongdoer. Accordingly the vicarious liability cases immunizing principal employers under an indirect employer theory are inapplicable.

The majority opinion sends the message that principal employers may negligently hire an incompetent independent contractor to perform inherently dangerous work and escape tort responsibility for injuries their negligent hiring causes to an employee of the independent contractor. This result contravenes our prior case law and the policies underlying tort law and worker's compensation law. I therefore dissent. I am authorized to state that CHIEF JUSTICE NATHAN S. HEFFERNAN and JUSTICE WILLIAM A. BABLITCH join in this dissent.