Jeffrey ASHBY, Plaintiff and Appellant,

v.

NORTHWESTERN PUBLIC SERVICE
COMPANY, Defendant and
Appellee.

No. 17530.

Supreme Court of South Dakota.

Argued Jan. 14, 1992.

Decided Sept. 30, 1992.

Michael J. Schaffer and Marie E. Hovland of Davenport, Evans, Hurwitz & Smith, Sioux Falls, for plaintiff and appellant.

Francis M. Smith of Woods, Fuller, Shultz & Smith, Sioux Falls, for defendant and appellee.

AMUNDSON, Justice.

Jeffrey Ashby (Ashby) appeals from trial court's grant of summary judgment in favor of Northwestern Public Service (Northwestern). We affirm.

### FACTS

Ashby was an employee of Duke's Tree Service (Duke's), an independent contractor which was hired to perform tree-trimming services for Northwestern. Ashby worked as part of a two-man crew with Troy Madden (Madden). Madden operated the boom and trimmed trees while Ashby remained on the ground to pick up branches. On June 30, 1983, while working in Freeman, South Dakota, Ashby sustained severe burns when a 7,200–volt power line was severed during the tree-trimming operation and fell to the ground, coiling around him. This occurred when the boom, operated by Madden, came into contact with the line which caused it to sever.

There is evidence that prior to the accident, a Northwestern employee, Duane Stahl (Stahl), warned Madden and Ashby about safety around high voltage lines after observing the Madden/Ashby crew working in an unsafe manner. Madden and Ashby stated they did not recall any such warning. There is further evidence that Mervin Erickson (Erickson), the owner of Duke's, repeatedly warned his employees of the dangers involved with working around high voltage lines. Erickson also stated that his employees were aware of safety precautions, such as asking Northwestern to de-energize the line or requesting line hoses to insulate the lines, but neither Madden nor Ashby made any such request prior to the accident. The record reflects that both Ashby and Madden were aware of the dangers involved in working around high voltage lines and knew the precautions they could take.* Also, this danger was clearly obvious to both Ashby and Madden. Madden's deposition testimony is as follows:

Q: (by Mr. Smith) Now, coming back to my question, it wasn't lack of instruction or it wasn't lack of warning that caused this accident, it was simply that on this occasion you weren't paying attention to what you were doing; isn't that right?

A: (by Madden) I guess you could put it that way.

Q: Of course I'm going to ask an obvious question here, Mr. Madden, but I need to ask it. If that line had been de-energized, of course the accident wouldn't have happened, would it?

A: That's true.

Q: And if you had not moved the knuckle against the power line, under your own theory of how this happened, it wouldn't have happened, would it?

A: That's true.

Q: Because of the danger?
A: Yes.
Q: You knew that?
A: I know there's a danger, yes.

---

* Ashby's deposition testimony regarding the danger is as follows:
   Q: (by Mr. Smith) Did it make you nervous?
   A: (by Ashby) I didn't like to see anybody up around the power lines.

Thus, by Madden's own testimony, either a request for de-energization or more careful maneuvering of the bucket could have prevented the accident.

Northwestern and Duke's entered into a contractual arrangement whereby Duke's was delegated sole authority over the manner of performance of the tree-trimming operation. Under the contract it was Duke's obligation to request de-energization of the power lines, and Duke's responsibility to provide any protective equipment or other safeguards. The contract specifically states: "[T]he responsibility for safety in all tree trimming and tree removal work shall be and remain with the Contractor [Duke's]."

Pursuant to the contract, Duke's carried worker's compensation insurance for its employees and Ashby has received the benefits from this. Ashby commenced an action against Northwestern on June 13, 1986. Northwestern filed a motion for summary judgment, which was granted by the trial court. In granting the motion, the trial court determined that there was no breach of any duty of care owed by Northwestern to Ashby, and Northwestern was not vicariously liable for any negligent acts on the part of independent contractor, Duke's, and its employee, Madden. Ashby appeals from that determination. Further facts will be discussed below.

### ISSUES

I. Whether trial court erred in holding there was no breach of any duty of care owed by Northwestern to Ashby?

II. Whether Northwestern can be held vicariously liable for the negligence of Duke's and its employees?

III. Whether Northwestern's acts constituted negligence per se?

### ANALYSIS

*Standard of Review*

■■■ The standard of review for a grant or denial of summary judgment is well settled in this jurisdiction. As we recently set forth in *Waddell v. Dewey*

*County Bank,* 471 N.W.2d 591 (S.D.1991), the principal considerations are as follows:

'In reviewing a grant or a denial of summary judgment under SDCL 15–6–56(c), we must determine whether the moving party demonstrated the absence of any genuine issue of material fact and showed entitlement to judgment on the merits as a matter of law. The evidence must be viewed most favorably to the nonmoving party and reasonable doubts should be resolved against the moving party. The nonmoving party, however, must present specific facts showing that a genuine, material issue for trial exists. Our task on appeal is to determine only whether a genuine issue of material fact exists and whether the law was correctly applied. If there exists any basis which supports the ruling of the trial court, affirmance of a summary judgment is proper.'

471 N.W.2d at 593 (quoting *Garrett v. BankWest, Inc.,* 459 N.W.2d 833, 836–37 (S.D.1990), and *Pickering v. Pickering,* 434 N.W.2d 758, 760–61 (S.D.1989)).

With these considerations in mind, we address the merits of Ashby's appeal.

### I. Duty of Care

Ashby asserted several theories under which Northwestern owed him a duty of care, and then breached it. First, he alleged that Northwestern, as the owner of the property, owed Ashby a duty of care as a business invitee on its property. Second, he alleged that, pursuant to § 414 of Restatement (Second) of Torts, Northwestern had a duty to exercise reasonably careful supervision of the job site, since it retained some measure of control over the project. Finally, Ashby alleged Northwestern had a non-delegable duty of care to him based on the "inherently dangerous" activity doctrine.

The trial court found Northwestern's duty to Ashby was to refrain from affirmative acts of negligence which increased the risk of any danger incident to his engagement in the tree-trimming operation, and to properly discharge any duties flowing from control of the operation retained by it, if

any. The trial court then found Northwestern had not breached its duty of care to Ashby.

## A. Business Invitee

■ We first address Ashby's claim that he was a business invitee and, as such, was owed a duty of care commensurate with the danger presented. While we generally agree with this proposition, after reviewing the record in this case we conclude there was no genuine issue of material fact.

Ashby was a business invitee of Northwestern's and at the same time an employee of Duke's, the independent contractor. None of the South Dakota cases Ashby cites us to involve the relationship of owner, independent contractor, and employee of independent contractor. They instead involve third-party claimants and are thus inapplicable to the case at bar. *Musch v. H–D Elec. Coop., Inc.*, 460 N.W.2d 149 (S.D.1990); *Mitchell v. Ankney*, 396 N.W.2d 312 (S.D.1986); *Ward v. LaCreek Elec. Ass'n*, 83 S.D. 584, 163 N.W.2d 344 (1968).

Ashby also cites us to *Ruhs v. Pacific Power & Light*, 671 F.2d 1268 (10th Cir. 1982), wherein the court denied summary judgment to defendant power company in a lawsuit brought by a tree trimmer for personal injuries caused by electric shock. In *Ruhs*, however, the plaintiff had only a few days of experience in trimming trees around power lines, and he testified that to his belief the lines were not energized. *Id.* at 1272. On this basis, the 10th Circuit held a jury question was presented as to whether the risk to Ruhs was reasonably foreseeable, stating:

> The duty to an invitee is that of reasonable care under all the circumstances, including the duty to take reasonable precautions to protect the invitee from dangers which are foreseeable from the arrangement or use.

*Id.* This is a far different factual scenario than Ashby presents.

In the present case, both Ashby and Madden admitted they knew the line was energized and contact with it would be dangerous. Ashby had been employed by Duke's for approximately one year, and Madden for at least three years. Erickson stated he had repeatedly advised all Duke's employees of the dangers of contact with high voltage wires. Erickson had also informed Ashby and Madden that they could get a line de-energized or get insulator hoses for the lines if they simply requested it.

This court has held that a master will not be held liable for failing to provide a safe work place, where the danger is obvious to an employee and can readily be observed by a person of ordinary intelligence. *Jackson v. Van Buskirk*, 424 N.W.2d 148 (S.D. 1988). There is no question that Ashby and Madden knew of the danger of working around high voltage lines and these lines were easily observable through the eyes of both these individuals. This principle is applicable to the facts of this case, since to hold otherwise would be making Northwestern an insurer for the safety of its independent contractor's employees, which this relationship clearly does not call for. *See Lovell v. Oahe Elec. Coop.*, 382 N.W.2d 396 (S.D.1986); *Engleman v. Nebraska Pub. Power Dist.*, 228 Neb. 788, 424 N.W.2d 596 (1988).

In this particular case, Madden and Ashby (the invitees) knew of and appreciated the peril of working around these lines, which facts certainly diminish and lessen the scope of the duty owed by Northwestern. The trial court did not err in finding no breach of duty in this case, since the danger was so obvious.

## B. Northwestern's Control

■ We next turn to Ashby's claim that, pursuant to § 414 of the Restatement (Second) of Torts, Northwestern had a duty to exercise reasonably careful supervision of the job site, since it retained some measure of control over the project. The amount of control maintained by Northwestern was clearly set out in the contract between Duke's and Northwestern.

Under the contract, Duke's was delegated sole authority over the manner of performance of the tree-trimming operation including all safety measures. The only

control Northwestern retained was the right to (1) designate the areas where the trees were to be trimmed, (2) inspect the work during its progress and at its completion, (3) require the contractor to "re-execute" any work that was faulty, and (4) suspend or terminate the work.

We have previously held: "A general supervisory right to inspect work in order to insure its satisfactory completion does not render the property owner liable for the negligence of an independent contractor." *Blumhardt v. Hartung*, 283 N.W.2d 229, 234 (S.D.1979). *See also Bramer v. United States*, 595 F.2d 1141 (9th Cir.1979); *Cordova v. Parrett*, 146 Ariz. 79, 703 P.2d 1228 (Ct.App.1985); *Crawford v. Florida Steel Corp.*, 478 So.2d 855 (Fla.Dist.Ct. App.1985); *Kemp v. Big Horn County Elec. Coop., Inc.*, 244 Mont. 437, 798 P.2d 999 (1990). Pursuant to the Duke's–Northwestern contract, there is no control beyond a general supervisory right which was retained by Northwestern.

Ashby argues that the dispute as to whether or not Stahl actually warned Madden and Ashby raises a genuine issue of material fact for the jury. We disagree. If it is true Stahl did not warn Madden and Ashby, then Northwestern acted in accordance with the contract as it did not retain any control over Duke's employees' safety. If it is true that Stahl warned Madden and Ashby, then Northwestern acted properly.

## C. Inherent Danger

■ We now turn to Ashby's argument that Northwestern owed him a duty because the tree-trimming operation was inherently dangerous. We have previously refused to impose strict liability on the electrical provider and we again decline to do so. *Lovell*, 382 N.W.2d at 398; *Ward*, 83 S.D. at 590–91, 163 N.W.2d at 347. Thus, we must determine whether the tree trimming itself was inherently dangerous or whether negligence by the Madden/Ashby crew created the danger.

Erickson stated that the instruction given to Duke's crews was to at all times keep their equipment at least six feet from power lines, and where a closer proximity was unavoidable, to have the line de-energized. Madden testified that it was his act of maneuvering the uninsulated portion of the boom too close to the power line which caused the accident. Madden further admitted he did not follow instructions about staying at least six feet away from the wires, nor was a request to de-energize the line made as authorized by the contract. We think it clear from these facts that the negligent manner of performance by Madden and Ashby created the dangerous situation rather than the work being performed.

In this case, Northwestern is the indirect employer of Ashby, so that to make it liable in common tort would be inconsistent with the well-established principle that worker's compensation is the exclusive remedy for an employee injured on the job. The Wisconsin Supreme Court adhered to this position in *Wagner v. Continental Cas. Co.*, 143 Wis.2d 379, 421 N.W.2d 835 (1988), when it held:

> The Anderson court reasoned that the injured employee, unlike the injured non-employee, is compensated for the risks of employment by a combination of wages, benefits and entitlement to worker's compensation. The court further reasoned that the principal employer pays for the employee's package of wages, benefits or entitlements indirectly through the contract price which includes the labor costs. According to the court, the principal employer does not escape liability for injury to the employee; the principal employer pays for any injury through the contract price[.]

*Id.*, 421 N.W.2d at 843–44.

To hold Northwestern responsible in this case would, in our opinion, be establishing an end-run play around the established worker's compensation law in this state. Northwestern's contract with Duke required that Duke provide worker's compensation benefits for its employees, perform the work safely, and provide a qualified and experienced crew to perform the work.

The appellant has cited this court to two prior decisions involving claims against owners for work classified as being inherently dangerous which was being per-

formed by an independent contractor and the adoption of strict liability for "abnormally dangerous" activities. *See Fleege v. Cimpl,* 305 N.W.2d 409 (S.D.1981); *McCarrier v. Hollister,* 15 S.D. 366, 89 N.W. 862 (1902). A review of these cases shows that neither involved a claim by an employee of an independent contractor against the principal employer. Neither case had any issue dealing with our worker's compensation remedies and are therefore inapplicable to the facts of this case.

In light of our holding that trial court properly granted summary judgment, we need not reach Issues II and III since we find them to be without merit. Trial court's judgment is hereby affirmed in all respects.

MILLER, C.J., and WUEST, HENDERSON and SABERS, JJ., concur.